**Sharon MURASKIN, Plaintiff and Appellee,**

v.

**Murray MURASKIN, Defendant and Appellant.**

**Civ. No. 10374.**

Supreme Court of North Dakota.

June 28, 1983.

R. Lee Hamilton, Grand Forks, for plaintiff and appellee.

Robert A. Alphson, Grand Forks, for defendant and appellant.

SAND, Justice.

Murray Muraskin (Murray) appealed from a fourth amended judgment, dated 8 December 1982, modifying the visitation rights of Sharon Muraskin (Sharon) to allow her visitation of the minor children at a place of her choosing. Murray asked the trial court for a stay pending appeal, which was denied. He then requested a stay from this Court, which was granted with the condition that the appeal be expedited.

As a result, the third amended judgment, which in pertinent part provides as follows, remains operative.

"Each party shall have reasonable rights of visitation with the children in the custody of the other party, which shall include at the home city of the respective chldren (a) continuous visitation from 8:00 P.M. Friday to 10:00 P.M. Sunday of such week-ends during the year as either party may select (after contacting the other prior to making travel arrangements), and (b) extended continuous ten-day visitation during Christmas holiday school vacation. Such continuous extended Christmas school vacation may take place at the custodial home of the children upon consent of the custodial parent. Reasonable visitation rights shall further include extended continuous visitation between June 15th and August 15th of each year *if the parties can mutually agree upon a single location where all five children can visit with each other as well as their non-custodial parent. Otherwise, such continuous extended summer school vacation may take place at the custodial home of the children upon consent of the custodial parent.*" [Emphasis added.]

This judgment (third amended) was affirmed by this Court in *Muraskin v. Muraskin,* 283 N.W.2d 140 (N.D.1979).

The fourth amended judgment changed the place of summer visitation for Sharon and, provides, in pertinent part, as follows:

"The plaintiff (Sharon) shall be entitled to visit with the minor children from June 15 to on or before July 30th and one week during the Christmas vacation from school of each year.

"For 1982 the plaintiff shall be entitled to one week to encompass Christmas and not New Year's Day. During the winter of 1983–84 the plaintiff shall have visitation during a week not to encompass Christmas but to encompass New Year's Day.

"The *plaintiff may exercise this visitation at a place of her choosing* but she shall not take the children out of the United States without prior court approval." [Emphasis added.]

We note that the parties have been involved in protracted litigation over child custody and visitation rights since their divorce on 12 October 1976.

Murray and Sharon have five children: Stephanie (age 21); Ben (age 19); David (age 17); Ted (age 14); and Sam (age 12).[1] Originally Sharon had custody of all the children. Subsequently, on 29 July 1977, custody of Stephanie was transferred to Murray. By the third amended judgment, 31 October 1978, custody of David, Ted and Sam was transferred to Murray, and Sharon was given custody of Stephanie and Ben. Both Murray and Sharon have since remarried, but not to each other.

After the third amended judgment was affirmed by this Court in August of 1979, Sharon, in September 1979, brought a motion to change visitation rights. The motion was denied. Sharon again filed a motion for change of visitation rights on 8 July 1982, and Murray filed a cross-motion. The crux of Sharon's motion was to modify the summer visitation to allow the visitation to be in her home in Florida, rather than in the Grand Forks area. After disqualification of Judges the matter came on for a hearing, resulting in the fourth amended judgment, which is now on appeal to this Court.

At a hearing on 31 August 1982 the trial court, over the objection of Murray, and in the absence of counsel, conducted an in camera interview with Ted and Sam before issuing its order for the fourth amended judgment. Murray, on 19 January 1983, made and filed a request with the clerk of court for the transcript of the in camera proceedings. The court, on 4 February 1983, issued and filed an order directing that the transcript of the in camera interview with the children not be made available to the parties, but be made available to the Supreme Court if the parties so requested. The order, in part, stated that the court gave the children assurances that whatever they said would be confidential,

that the transcript would not be made available to the parties, and that the confidentiality would not be breached. Murray, on 25 February 1983, filed an amended request for the transcript of the in camera proceedings. This request was denied. Murray contended that as a result he was unable to fully prepare and present his appeal. The notice of appeal to this Court was filed with the clerk of court on 19 January 1983, or prior to the proceedings requesting the transcript of the in camera proceedings.

Murray contended that the trial court's order dated 4 February 1983 directing that the transcript not be made available to either party was a nullity because the appeal filed with the clerk of court on 19 January 1983 divested the trial court of jurisdiction. *Harwood v. Harwood,* 283 N.W.2d 144 (N.D. 1979); *Orwick v. Orwick,* 152 N.W.2d 95 (N.D.1967); and *Bryan v. Miller,* 73 N.D. 487, 16 N.W.2d 275 (1944).

Sharon asserted that Murray at no time made an objection to the in camera interview procedure and therefore was estopped from raising this issue on appeal. In support of her position she relies upon a portion of the transcript wherein the court announced the procedure it would follow regarding the interview. However, the court order, dated 4 February 1983 prohibiting the transcript from being made available to the parties, in part, specifically states:

> "The mother (Sharon) wanted the children to testify; the father (Murray) and his present wife (Margaret) vehemently opposed having the children testify."

Murray, in response to Sharon's contention, argued that once the court has made a decision regarding the in camera testimony (interview) and he had previously voiced his objection to that procedure, he need not object to the announced detailed procedure the court employed in carrying out its decision. We agree. *See,* Rule 46, North Dakota Rules of Civil Procedure.

---

1. These were the children's ages at the time of the fourth amended judgment. During oral argument we were informed that David had subsequently reached the age of 18. Consequently, Sharon's visitation rights with only Ted and Sam are of concern on this appeal.

■ While the issue regarding the technical jurisdiction of the trial court on certain matters after an appeal has been filed might well stand some refinement, we need not make such refinements because we dispose of the issue on the doctrine of comity.

The trial court gave the children assurances that whatever they told the court in the in camera interview would be considered confidential and would not be made available to the parties. The court also admonished the parties not to question the children as to what they said.

Whatever may be said regarding the procedure, we cannot ignore the trial court's statement to the children. Out of comity and in order to continue the regard and respect for the courts, we must uphold the trial court's order.

Because of the procedure followed in the interview and the trial court's promise of confidentiality to the children, we find ourselves in a peculiar position. We have the transcript of the interview but we may not refer to or use specific statements made by the children without breaking the seal of confidentiality placed upon it by the trial court.

■ The trial court in denying Murray's motion for a stay of the fourth amended judgment stated:

"1. After observing the testimony and demeanor of the children, the Court observed that the children were older and more mature and it would be in their best interest to have visitation with their mother in their mother's home instead of the artificial environment of a motel room or rented lake cabin.

"2. The Court found the children were becoming more interested in their heritage and family background, which is Jewish. Thus the mother should be able to take the children to visit her parents and other relatives."

This observation indicates that the denial of the stay was to a degree based upon the testimony and the demeanor of the children. No similar statement is contained in the memorandum opinion, findings of fact, conclusions of law, and order for judgment. Nevertheless, we are in no position to state whether or not the transcript of the interview supports the trial court's decision because, if we did, we would indirectly give a clue regarding the testimony given by the children. The net result is that the transcript of the interview, on appeal, serves little or no significant value.[2]

Murray contended that the trial court improperly granted Sharon's motion to amend the third amended judgment, resulting in the fourth amended judgment.

The trial court, after noting the provisions of NDCC § 14–05–22(2) stated that it found significant changes in circumstances since the third amended judgment:

"Sharon has recently remarried. The children are becoming older and more mature.

"The records indicated that the two youngest boys, Ted and Sam, are doing very well in school and have displayed a mature attitude in classes and toward their teachers.

**2.** While the right to confrontation of witnesses is not a constitutional right in civil cases as it is in criminal cases, the procedure used here raises significant due process questions. A party to any procedure is entitled to know what evidence is used or relied upon and has a right generally to present rebutting evidence or to cross-examine unless such right is waived by the parties either expressly or by implication. The relationship of child and parent may not be changed without due process of law. 59 Am. Jur.2d, *Parent and Child*, § 1, p. 84, and § 42, p. 128; 67A C.J.S. *Parent and Child* § 38, p. 281. The record of the private interview with the child is to be made known to the parties and counsel in the proceedings unless waived by the parties. 67A C.J.S. *Parent and Child*, § 38, p. 284.

On the subject of private interviews with the child, see the Annotation in 99 A.L.R.2d 954 and Later Case Service supplementing Vol. 96–100 A.L.R.2d pp. 423–425. In this respect we also note that the Forty-eighth Legislative Assembly defeated a Bill which would have permitted the judge to call children as witnesses in divorce and custody cases. These procedures are fraught with due process problems. See also the special concurring opinion in *Bergstrom v. Bergstrom*, 296 N.W.2d 490, 497 (N.D. 1980), and further citations in case law and encyclopedia references.

"The children are becoming more interested in their heritage and family background."

These are the findings of fact upon which the trial court relied in reaching its conclusion to amend the third amended judgment.

In *Muehler v. Muehler,* 333 N.W.2d 432 (N.D.1983), we said that a mere change of circumstances per se did not constitute justifiable grounds to modify a judgment pertaining to support payments but the factors that brought about the changes should be considered. For children to become older and more mature is a normal pattern. If they did not, then it would constitute a change from the norm and would be a factor to be considered. If becoming older and more mature were to constitute grounds for changing custody or visitation rights, then periodically changes would have to be made merely upon passage of time. No legal basis has been established how or why getting older, more mature, and becoming more interested in heritage (which are accepted as facts) should affect the visitation rights of Sharon. If the children were asked to express a wish or desire regarding visitation with divorced parents, the location or relocation of the divorced parent could play a dominant role in the child's decision if weight is given to the child's wishes. A divorced parent could relocate to an area of great interest merely to entice the child to express the wish to visit at that location.

Whatever the interrelation or connection visitation or its place of change may have to "interest in heritage" was not established. Neither is it obvious.

■ In matters pertaining to custody and visitation rights, we are concerned primarily with the best interests of the children and not the wishes or desires of either parent. *Burich v. Burich,* 314 N.W.2d 82 (N.D. 1981).

■ Visitation privileges are created to promote the best interests of the child. *Burich, supra.* The children involved here have been doing well, above average, under the environment created by the third amended judgment. The record reflects that the trial court fully considered the best interests of the children in issuing the third amended judgment. Under such a situation, compelling reasons need to be presented to make any substantive changes. This has not been accomplished. It would serve no useful purpose to, and accordingly we will not, review the events that took place under prior arrangements regarding custody and visitation.

After careful review of the record, we conclude that the "change in circumstances" do not militate in favor of the fourth amended judgment, but rather militate in favor of continuing the third amended judgment which was previously affirmed by this Court. This is not a situation where the trial judge may have tacitly questioned the validity of the judgment issued earlier by another judge. This judgment has been tested. Accordingly, we conclude that the trial court erred in amending the third amended judgment.

■ Murray also contended that another district judge should be appointed or designated to hear any future proceedings in this matter.

NDCC § 29–15–21(2), as amended by chapters 318 and 346 of the 1981 Legislative Assembly,[3] provides, in pertinent part, as follows:

"Any proceeding to modify an order for alimony, property division, or child support pursuant to section 14–05–24 or an order for child custody pursuant to section *14–05–22 shall be considered a proceeding separate from the original* action and the fact that the judge sought to be disqualified made any ruling in the original action *shall not bar a demand for a change of judge.*" [Emphasis added.]

NDCC § 14–05–22(2) relates to "rights of visitation." Consequently, the provisions of subsection 2 of § 29–15–21, NDCC, also have application to visitation rights, the

---

3. Other provisions of this section were also amended by House Bill 1633 in the 1983 Session of the Legislative Assembly, but subsection (2) was not.

subject matter of this lawsuit. Therefore, no need exists for this Court to direct a change of judge because either party, under the provisions of § 29–15–21(2), may ask for a change of judge.

For the reasons stated in the opinion, the fourth amended judgment is reversed and the third amended judgment remains in effect. However, if the parties refuse to cooperate in the visitation rights set out in the third amended judgment, the Court should supervise the visitation but within the parameters of the third amended judgment.

ERICKSTAD, C.J., VANDE WALLE and PAULSON, JJ., and PAULSON, District Judge, concur.

PAULSON, District Judge, sitting in place of PEDERSON, J., disqualified.