**Kathleen A. REINECKE, f.k.a. Kathleen A. Griffeth, Plaintiff and Appellee,**

v.

**Scott A. GRIFFETH, Defendant and Appellant.**

Civ. No. 940384.

Supreme Court of North Dakota.

June 27, 1995.

Scott A. Griffeth, pro se, defendant and appellant.

Leslie D. Johnson, of Johnson Law Office, Fargo, for plaintiff and appellee.

LEVINE, Justice.

Scott A. Griffeth appeals from an amended judgment modifying his visitation rights and child support obligation. We affirm, but remand for consideration of Kathleen Reinecke's entitlement to attorney's fees on appeal.

Griffeth and Reinecke were divorced in June 1992. They have two children, Randall, 12, and Leah, 10. The parties' divorce judgment was the product of a negotiated stipulation. The judgment awarded joint legal and physical custody of the children to the parties, but stated "[t]he primary residence of the children shall be with the Plaintiff, Kathleen." Griffeth received "liberal and reasonable visitation ... to include a minimum of every other weekend and two evenings per week and alternative holidays." He was to pay Reinecke $300 per month in child support.

On March 25, 1994, Griffeth moved to modify the judgment to add six weeks of summer visitation with the children. Reinecke resisted, moving for a specific schedule for weekend and holiday visitation and a reduction in visitation to one weekday evening per week. Reinecke alleged visitation had "been a major source of conflict" between the parties. She also moved to modify Griffeth's child support obligation to comply with the North Dakota child support guidelines.

The parties orally argued their motions on May 5, 1994. The trial court then issued its memorandum decision and order on the issue

of visitation, establishing a structured visitation schedule. An amended judgment was entered, providing pick-up and drop-off times for weekend visitation, specifying the holidays the children would spend with Griffeth, and reducing Griffeth's weekly visitation to one weekday evening per week during the school year. The judgment also provided Griffeth with four weeks of summer visitation and left in place his two weekday evenings per week visitation during the summer months. The trial court delayed resolving the child support obligation because insufficient evidence of Griffeth's income had been provided. The trial court ordered Griffeth to provide Reinecke with additional financial documents, including his business ledger, bank statements and his 1993 tax return.

On October 5, 1994, the trial court issued its order setting Griffeth's child support obligation at $550 per month, retroactive to June 1, 1994, based upon its calculation of Griffeth's current net monthly income of at least $1,700, and taking into consideration other assets which Griffeth possessed. A second amended judgment was entered, and Griffeth appealed.

On appeal, Griffeth challenges the trial court's reduction of his visitation during the school term to one weekday evening per week, the increase in his child support obligation to $550 per month, and the trial court's reliance on certain financial documents to calculate his monthly income for purposes of setting child support.

### Visitation

■ A trial court's determination on visitation is a finding of fact which we will affirm unless clearly erroneous. NDRCivP 52(a); *Dschaak v. Dschaak*, 479 N.W.2d 484, 487 (N.D.1992). A finding is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Dalin v. Dalin*, 512 N.W.2d 685, 687 (N.D.1994).

■ Griffeth contends the trial court erred in modifying his weekly visitation rights, because there has been no significant change in circumstances since the previous visitation order necessitating a modification. The party moving to modify a visitation order bears the burden of establishing that a significant change of circumstances has occurred since the prior visitation order, and that it is in the best interests of the children to modify the order. *Muraskin v. Muraskin*, 336 N.W.2d 332 (N.D.1983). The primary purpose of visitation is to promote the best interests of the children, not the wishes or desires of the parent. *Dschaak*, 479 N.W.2d at 487; *Muraskin*, 336 N.W.2d at 336. *See* NDCC § 14–05–22(2). However, visitation with the noncustodial parent is presumed to be in the best interests of the children. *Blotske v. Leidholm*, 487 N.W.2d 607 (N.D.1992).

■ The trial court did not make findings of fact as to what the significant change in circumstances was in this case. However, we have relied on implied findings of fact when the record has enabled us to understand "the factual determination made by the trial court and the basis for its conclusions of law and judgment entered thereon." *All Seasons Water Users v. Northern Improvement Co.*, 399 N.W.2d 278, 281 (N.D.1987). *See Tiokasin v. Haas*, 370 N.W.2d 559, 564 (N.D.1985) (relying on transcript of oral hearing as source of implied findings); *Burich v. Burich*, 314 N.W.2d 82 (N.D.1981) (reviewing evidence in record for source of trial court's implicit finding that mother's relocation was in best interests of children). *See also Guthmiller v. Guthmiller*, 448 N.W.2d 643, 646 (N.D.1989) (implied finding of material change in circumstances justifying reduction of obligor's child support obligation); *Quirk v. Swanson*, 368 N.W.2d 557 (N.D.1985) (implied finding on party's fitness and entitlement to visitation). The record convinces us there is an implicit finding that a significant change of circumstances occurred since the previous order.

Reinecke testified at the hearing and by affidavit that the two weekday-evening visitation during the school term interfered with the children's ability to complete their schoolwork, and contributed to behavior problems at home and poor performance in school. She also testified that the parties' son has been diagnosed with Attention Deficit Disor-

der since the parties' divorce and, consequently, needs more time to complete his schoolwork than he needed previously. The evidence before the trial court suggested the visitation on two evenings each week during the school year interfered with the children's ability to perform in school and disrupted their normal routine. These disruptions contributed to behavior problems in the children and conflicts between the parents. *Cf. Muraskin,* 336 N.W.2d at 336 [reversing trial court's modification of visitation because children were doing "above average" under prior order]. Based upon our review of the record, we cannot say the trial court's decision to modify Griffeth's visitation privileges was clearly erroneous. *See Woolridge v. Schmid,* 495 N.W.2d 52 (N.D.1993).

Griffeth next argues that the trial court's visitation order is clearly erroneous because it reduced his weekly visitation with the children during the school term without proof that the prior visitation schedule was harmful to the children. Griffeth relies on NDCC § 14–05–22(2), which says:

"After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent- child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health."

Griffeth misreads the statute. Section 14–05–22(2) does not apply to a modification proceeding where the order modifying visitation does not revoke or restrict visitation. *Cf. Healy v. Healy,* 397 N.W.2d 71 (N.D. 1986) [statute requires preponderance of evidence showing endangerment to justify modification which restricts visitation].

Reinecke requested the trial court create a structured visitation schedule to alleviate conflicts between the parties in arranging visitation. When parties cannot cooperate in arranging visitation, we have recommended a structured visitation schedule. *See Blotske,* 487 N.W.2d at 610. Griffeth maintains the trial court substantially reduced his visitation rights by eliminating one evening per week during the school term, rendering "39 days lost and forever unrecoverable" from the visitation schedule. However, in addition to reducing Griffeth's weekly visitation, the trial court granted Griffeth an extended summer visitation of four weeks and left in place his two weekday-evening visits per week when the children are not in school. The actual difference in Griffeth's yearly visitation time under the amended judgment is negligible, and we do not view it as a "restriction." *See Persons v. Persons,* 396 N.W.2d 744 (N.D. 1986). During the four-week summer visitation, Griffeth will have exclusive physical custody of the children, in contrast to the loss of only two hours of evening visitation per week during the school term. We are not convinced the trial court's reshaping of the visitation order is clearly erroneous. *See Gardebring v. Rizzo,* 269 N.W.2d 104 (N.D.1978). Conflict over visitation can pose harm to the emotional welfare of the children caught in the middle. *See Alvarez v. Carlson,* 524 N.W.2d 584, 591 (N.D.1994). The trial court's modified visitation schedule provides a creative solution to what had become a source of contention between the parties.

### Child Support

Griffeth challenges the trial court's modification of his child support obligation on two separate grounds. First, he argues the trial court's modification of his child support obligation was clearly erroneous because there was no evidence of a material change in circumstances. However, the original judgment setting Griffeth's child support obligation was entered June 16, 1992. The motion to modify support was brought nearly two years after the original judgment setting the child support obligation. Section 14–09–08.4(3), NDCC,[1] excuses a party from show-

---

1. Section 14–09–08.4(3), NDCC, says:
 "If a child support order sought to be amended *was entered at least one year before the filing of a motion or petition for amendment, the court shall order the amendment of the child support order to conform the amount of child support* payment to that required under the child support guidelines, whether or not the motion or petition for amendment arises out of a periodic review of a child support order, and *whether or not a material change of circumstances has taken place,* unless the presumption that the

ing a material change of circumstances prior to obtaining an amendment of a child support amount which is not consistent with the guidelines, when the support order was entered at least one year before the motion to modify was filed. *O'Callaghan v. O'Callaghan*, 515 N.W.2d 821, 823 (N.D.App.1994). Therefore, the trial court correctly determined that no material change of circumstances was necessary to modify the support order. *Id.*

Griffeth next argues that the trial court impermissibly considered the value of the equity in his home in setting his child support obligation. To support his contention, he points to the trial court's finding which says:

"2. In addition to his actual net income, other resources of the Defendant must also be taken into account and imputed: ... equity in residential real estate located at 244 12th Avenue East in West Fargo, North Dakota which approximates $50,000."

Equity in an obligor's homestead up to $80,000 in value may not be considered when calculating an obligor's income.[2] NDAC § 75–02–04.1–07 (1991) [amended effective January 1, 1995, presently located at NDAC § 75–02–04.1–09(3)(a)]. *See* NDCC § 47–18–01 [homestead exemption]. Therefore, it was error for the trial court to consider the value of Griffeth's homestead equity in computing his monthly income to arrive at his child support obligation. However, as it turns out, this error does not invalidate the court's computation of child support because that computation is adequately supported by the court's other findings.

The trial court found Griffeth's net monthly income was "at least $1,700.00," without reference to Griffeth's homestead equity or other assets. Under the guidelines, a child support obligor with two children who earns $1,700 per month pays $497. Thus, the heart of this dispute is whether the trial court's findings of fact as to Griffeth's other assets support an upward deviation from $497 to the $550 ordered by the trial court, without inclusion of the homestead equity. We think they do.

A trial court's determination on child support will be affirmed unless it is clearly erroneous. *Montgomery v. Montgomery*, 481 N.W.2d 234, 235 (N.D.1992). The amount of child support provided under the guidelines is presumptively correct. NDCC § 14–09–09.7(3). A trial court may, however, deviate from the guideline amount, if it finds, by a preponderance of the evidence, the presumptive guideline amount is not the correct amount of support required, taking into consideration the best interests of the children. *Id.*[3] The trial court is required to make

---

correct amount of child support would result from the application of the child support guidelines is rebutted. If a motion or petition for amendment is filed within one year of the entry of the order sought to be amended, the party seeking amendment must also show a material change of circumstances." (Emphasis added.)

This section became effective October 1, 1993. *See Garbe v. Garbe*, 467 N.W.2d 740 (N.D.1991).

**2.** The child support guidelines were amended effective January 1, 1995. Under these amended guidelines:

"Assets may not be considered [to calculate an obligor's ability to pay child support], to the extent they:

 a. Are exempt under North Dakota Century Code section 47–18–01 [homestead exemption]."

NDAC § 75–02–04.1–09(3)(a) (1995).

**3.** Before NDCC § 14–09–09.7(3) was amended by 1993 N.D.Laws, ch. 152, § 12, "the presumptive amount of child support under the guidelines could be rebutted only if 'factors not considered by the guidelines will result in an undue hardship.' " *Perala v. Carlson*, 520 N.W.2d 839, 841 n. 3 (N.D.1994). *See* NDAC § 75–02–04.1–06 (1991) (amended Jan. 1, 1995). In *Perala*, we noted that the hardship standard was inconsistent with NDCC § 14–09–09.7(3). 520 N.W.2d at 841. The January 1, 1995, amendments to the child support guidelines retain the undue hardship standard, but add numerous other factors which rebut the presumptive correctness of the guidelines support amount. Under the newly amended guidelines, the presumptive guideline amount is rebutted, if:

"a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children and:

 a. The increased need if support for more than six children is sought in the matter before the court;

 b. The increased ability of an obligor, with a monthly net income which exceeds ten thousand dollars, to provide child support;

 c. The increased need if educational costs have been voluntarily incurred, at private

specific findings demonstrating why the guideline amount has been rebutted. *Id.* *See* NDAC § 75–02–04.1–09(2)(g) (1995).

 The trial court believed Griffeth had not been helpful in providing proof of his income:

> "A cursory review of the Defendant's financial data provided to the Court for examination will not reveal a benchmark net income figure; neither will a more thorough one. Simply put, a very exhaustive dissection has had to be accomplished, and that has been possible only with the frequent assistance of Tylenol. Suffice it to say, this Court shares the Plaintiff's concern as to whether or not the Defendant's recordkeeping and reporting would pass Internal Revenue Service scrutiny. That, however, is not the issue before this Court."

The trial court took the complicated and occasionally illegible information which Griffeth provided and attempted to compute Griffeth's actual net monthly income. In addition to the value of the equity in Griffeth's homestead, the trial court listed a number of Griffeth's other assets, which it imputed to him as potential additional income, including accounts receivable for legal services rendered, a $30,000 money market account, and

$160,000 in nonresidential real estate equity. NDAC § 75–02–04.1–07 (1991) (amended Jan. 1, 1995). The trial court also found Reinecke, as custodial parent, incurs "substantial day-care expense (currently approximately $2,500.00 per year)" because she is employed full time. An obligee's child care expenses due to full-time employment are not factors considered by the guidelines, NDAC § 75–02–04.1–09(2)(f) (1991) (amended Jan. 1, 1995), *Perala v. Carlson,* 520 N.W.2d 839, 841 (N.D.1994), and may be used to support an upward deviation from the guidelines' presumptively correct support amount, if it is in the children's best interests.[4] *Perala,* 520 N.W.2d at 841. Given the sizable value of Griffeth's other assets, we are satisfied the trial court balanced the children's best interests with Griffeth's ability to pay and properly concluded that an upward deviation from the guidelines amount of $497 to $550 per month was proper. *Id.* at 842. *See Montgomery,* 481 N.W.2d at 235.

### Evidentiary Challenge

 Griffeth alleges the trial court relied on documents not properly in evidence to calculate his child support obligation. Griffeth further asserts he was not given notice

---

schools, with the prior written concurrence of the obligor;

d. The increased needs of children with disabling conditions or chronic illness;

e. The increased needs of children age twelve and older;

f. The increased needs of children related to the cost of child care, purchased by the obligee, for reasonable purposes related to employment, job search, education, or training;

g. The increased ability of an obligor, who is able to secure additional income from assets, to provide child support;

h. The increased ability of an obligor, who has engaged in an asset transaction for the purpose of reducing the obligor's income available for payment of child support, to provide child support;

i. The reduced ability of the obligor to provide support due to travel expenses incurred solely for the purpose of visiting a child who is the subject of the order;

j. The reduced ability of the obligor to pay child support due to a situation, over which the obligor has little or no control, which requires the obligor to incur a continued or fixed expense for other than subsistence

needs, work expenses, or daily living expenses, and which is not otherwise described in this subsection; or

k. The reduced ability of the obligor to provide support due to the obligor's health care needs, to the extent that the costs of meeting those health care needs:

(1) Exceed ten percent of the obligor's gross income;

(2) Have been incurred and are reasonably certain to continue to be incurred by the obligor;

(3) Are not subject to payment or reimbursement from any source except the obligor's income; and

(4) Are necessary to prevent or delay the death of the obligor or to avoid a significant loss of income to the obligor."

NDAC § 75–02–04.1–09(2) (1995).

4. The amended guidelines, effective January 1, 1995, list "[t]he increased needs of children related to the cost of child care, purchased by the obligee, for reasonable purposes related to employment, job search, education, or training" as a factor which can rebut the guideline child support amount. NDAC § 75–02–04.1–09(2)(f).

and an opportunity to respond to the use of those documents. These arguments are underwhelming. The procedure followed by the trial court was acceptable in the face of Griffeth's noncooperation throughout the modification proceeding.

Reinecke first moved to modify Griffeth's child support obligation on April 6, 1994. At that time, Reinecke moved for production of documents, requesting Griffeth's income tax returns, bank statements, and other evidence of income. Reinecke's principal contention throughout the proceeding was that Griffeth's actual net income was greater than the amount reflected on his income tax returns. Therefore, other financial documents were necessary to establish Griffeth's income. *See* NDAC § 75–02–04.1–02(3) & (7) (1991) (amended Jan. 1, 1995).[5] Griffeth is self-employed as an attorney and also works as a municipal judge. In response to the motion for production of documents, Griffeth provided only a largely illegible copy of his law office ledger and his tax returns for 1991 and 1992. He did not provide the other requested documents.

On June 6, 1994, after the court ordered entry of the amended judgment on visitation, it also ordered Griffeth to provide Reinecke with the requested financial information. Griffeth complied with this order and Reinecke submitted a letter brief to the court on August 16, 1994, attaching as exhibits the documents provided by Griffeth, including his office ledger, his 1993 income tax form and the W–2 form from his employment as a municipal judge, statements from various bank accounts, and a copy of a home mortgage application Griffeth submitted to First National Bank.

Griffeth fails to persuade us he lacked notice that the trial court would rely on those financial documents to compute his income for purposes of setting his child support obligation. Griffeth himself provided many of those documents, albeit as a result of the trial court's order to produce. He was served with a copy of Reinecke's letter brief and responded by brief to the trial court. In that brief, he attempted to explain and discount much of the information contained in the financial documents which he provided to Reinecke. In fact, Griffeth's own actions prolonged this dispute and prevented resolution of the child support issue during the visitation hearing. As the trial court pointed out in its amended order:

> "It is abundantly clear that had [Griffeth] been forthcoming and complete in the Plaintiff's initial discovery requests, the issue of child support could have been resolved concurrent with [Griffeth's] own motion for extended visitation, and without the necessity of a motion to compel as well as the employment of a certified public accountant."

We are convinced Griffeth understood the documents would be used to calculate his income. *See Schmidt v. Reamann*, 523 N.W.2d 70, 72 (N.D.1994) [obligor's failure to provide required financial information bars him from later claiming that the missing information constitutes a material change in circumstances requiring modification]. Griffeth did not ask for a hearing in the matter of child support. He did not object to the use of the financial documents, nor challenge their validity prior to this appeal. Griffeth's failure to object waives his evidentiary challenges. *City of Mandan v. Jewett*, 517 N.W.2d 640, 642 (N.D.1994).

## Attorney's Fees and Sanctions

■ Finally, Reinecke requests attorney's fees on appeal and sanctions against Griffeth, under Rule 13, NDRAppP, for noncompliance with the trial court's order that Griffeth pay her attorney's fees for the modification proceeding. Although we have concurrent jurisdiction with the trial court to award attorney's fees on appeal, we prefer the trial court decide the issue. *Rudh v. Rudh*, 517 N.W.2d 632 (N.D.1994). Therefore, we remand for a determination of Reinecke's entitlement to attorney's fees for defending this appeal.

■ As for Reinecke's request for sanctions, Rule 13, NDRAppP, has been used by this court as an enforcement mechanism to

---

**5.** Under the amended guidelines, when tax returns do not reasonably reflect an obligor's income from self-employment, the court may rely on other evidence of net income. NDAC § 75–02–04.1–05(1) (1995).

encourage compliance with our appellate rules of procedure, not to enforce trial court orders. *See, e.g., Schroeder v. Praska,* 512 N.W.2d 667 (N.D.1994) [awarding double costs for violation of Rule 30(b), NDRAppP, governing preparation of appendix]; *Lake Region Credit Union v. Crystal Pure Water, Inc.,* 502 N.W.2d 524 (N.D.1993) [assessing costs for failure to comply with Rule 30, NDRAppP]; *Bye v. Federal Land Bank Ass'n,* 422 N.W.2d 397 (N.D.1988) [assessing costs for failure to comply with Rule 30(b), NDRAppP]; *Dickinson Nursing Ctr. v. N.D. Dept. of Human Services,* 353 N.W.2d 754 (N.D.1984) [assessing costs for violation of Rule 30(b), NDRAppP]; *Simpler v. Lowrey,* 322 N.W.2d 848 (N.D.1982) [dismissing appeal for failure to respond to motion to dismiss or properly obtain a substitution of parties]. Other remedies are available to Reinecke to enforce the trial court's order, and we decline her invitation to expand Rule 13, NDRAppP, to cover noncompliance with lower court orders. *See, e.g.,* NDCC § 27–10–01.1(1)(c) [contempt of court includes intentional·disobedience of a court order].

The judgment is affirmed and remanded for consideration of attorney's fees.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

SANDSTROM, J., concurs in the result.