# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 40

Brett Michael Kingstone,        Plaintiff and Appellant

v.

Trisa Ranae Tedrow Kingstone,        Defendant and Appellee

### No. 20240143

Appeal from the District Court of Eddy County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Bahr, Justice.

Jacey L. Johnston (argued) and Blayze Fisher (on brief), under the Rule on Limited Practice of Law by Law Students, Grand Forks, ND, for plaintiff and appellant.

Robert G. Will, Minot, ND, for defendant and appellee.

**Bahr, Justice.**

[¶1]   Brett Kingstone appeals from a district court judgment awarding child support to Trisa Tedrow Kingstone. On appeal, Brett Kingstone argues the court erred in relying on expert testimony, in calculating his net income for his child support obligation, in awarding an upward deviation of his child support obligation, and in refusing to amend the judgment. We affirm in part, reverse in part, and remand.

I

[¶2]   Brett Kingstone and Trisa Tedrow Kingstone were married in Florida in July 2020. They entered a prenuptial agreement before their marriage. The parties have one minor child together, L.R.K., born in 2021. L.R.K. is diagnosed with hemophilia and Fragile X syndrome and has developmental and speech delays.

[¶3]   The parties separated in August 2022 when Trisa Tedrow Kingstone and L.R.K. moved from the Colorado marital home to North Dakota. In March 2023, Brett Kingstone commenced a divorce action in Florida and a child custody action in North Dakota. The parties divorced in August 2023 under the binding prenuptial agreement. The Florida divorce action did not address issues related to the minor child.

[¶4]   In December 2023, the North Dakota district court held a bench trial. The court awarded Trisa Tedrow Kingstone primary residential responsibility of L.R.K. and child support in the amount of $5,000 per month. Brett Kingstone's child support obligation includes $3,500, the maximum amount permitted under the child support guidelines when a parent's monthly income exceeds $25,000, as well as an upward deviation in the amount of $1,500.

[¶5]   After the district court entered the judgment, Brett Kingstone moved to clarify or amend the judgment. He asserted the transportation and exchange arrangements provision allowed Trisa Tedrow Kingstone to hinder his ability to

1

exercise his parenting time with L.R.K. because the provision gave Trisa Tedrow Kingstone unilateral control over when to use the "alternative" exchange location. The court denied the motion to amend the judgment. The court granted the motion to clarify the judgment, and clarified that the default exchange location would be at L.R.K.'s home unless the parties mutually agreed to use the alternative exchange location.

## II

[¶6]   Brett Kingstone argues the district court abused its discretion in relying on Trisa Tedrow Kingstone's expert witness, Tahnee Magnus. He argues Magnus could not accurately assess his income because she did not review the irrevocable trust agreements.

[¶7]   "Expert testimony is admissible whenever specialized knowledge will assist the trier of fact." *Condon v. St. Alexius Med. Ctr.*, 2019 ND 113, ¶ 28, 926 N.W.2d 136; *see also* N.D.R.Ev. 702. "Whether a witness is qualified as an expert and whether the testimony will assist the trier of fact are decisions largely within the sound discretion of the trial court." *Condon*, ¶ 28. (quoting *Kluck v. Kluck*, 1997 ND 41, ¶ 7, 561 N.W.2d 263). "A decision to admit expert testimony is reviewed for abuse of discretion only." *Id*.

[¶8]   Magnus is a certified public accountant and certified fraud examiner with nearly fifteen years of accounting experience. Magnus testified to Brett Kingstone's income and provided the district court with a summary of her analysis. At trial, Magnus testified her summary was "based strictly off his personal return and the holding company returns" from 2017 to 2022, as required by child support guidelines. *See* N.D. Admin. Code § 75-02-04.1-02(7) ("Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income."). She also testified she lacked access to the irrevocable trust agreements, but that she believes her summary accurately reflects Brett Kingstone's income.

[¶9]   Magnus's lack of access to the irrevocable trust documents goes toward the weight of her testimony, not its admissibility. *In re J.M.*, 2013 ND 11, ¶ 14,

2

826 N.W.2d 315 (doctor's admitted failure to review patient's entire file "goes to the weight of her opinion and not to its admissibility"); *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 163 (N.D. 1985) (stating "the weakness or non-existence of a basis for an expert's opinion goes to his credibility, and not necessarily to the admissibility of the opinion evidence"). We conclude the district court did not abuse its discretion in relying on Trisa Tedrow Kingstone's expert witness in determining Brett Kingstone's income for his child support obligation.

III

[¶10] The standard of review for child support decisions is well-established:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.

*Williams v. Williams*, 2023 ND 240, ¶ 14, 999 N.W.2d 192 (quoting *Updike v. Updike*, 2022 ND 99, ¶ 5, 974 N.W.2d 360). "A court errs as a matter of law if it does not comply with the requirements of the child support guidelines." *Knudson v. Knudson*, 2018 ND 199, ¶ 24, 916 N.W.2d 793. "The amount of child support calculated under the guidelines is rebuttably presumed to be the correct amount of child support in all child support determinations." *Williams*, ¶ 14 (quoting *Thompson v. Johnson*, 2018 ND 142, ¶ 9, 912 N.W.2d 315); *see also* N.D.C.C. § 14-09-09.7(4).

[¶11] "A correct finding of an obligor's net income is essential to determining the proper amount of child support." *Knudson*, 2018 ND 199, ¶ 25 (quoting *Thompson*, 2018 ND 142, ¶ 9). "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75-02-04.1-02(7). After determining the obligor's net income, the district court must apply the net

3

income to the child support guidelines to calculate the proper amount of child support. *Knudson*, ¶ 26. Section 75-02-04.1-02(11), N.D. Admin. Code, explains certain sources of the obligor's income are deducted from the obligor's gross annual income to calculate net income. Section 75-02-04.1-01(4), N.D. Admin. Code, defines gross income to mean "income from any source, in any form," except for limited exclusions. "The definition of 'gross income' is 'very broad and is intended to include any form of payment to an obligor, regardless of source, which is not specifically excluded under the guidelines.'" *Knudson*, ¶ 26 (quoting *Wilson v. Wilson*, 2014 ND 199, ¶ 24, 855 N.W.2d 105).

A

[¶12] Brett Kingstone argues the district court improperly considered irrevocable trust income reported on his personal tax returns when calculating his gross income. He asserts he lacks access to, and does not receive income from, the trusts.

[¶13] The child support guidelines define "gross income" to include "income from any source" and specifically includes "trust income." N.D. Admin. Code § 75-02-04.1-01(4)(b). The guidelines do not distinguish between irrevocable and revocable trusts. *Id*. Whether the obligor can control the receipt of trust funds is not relevant to whether the funds are income for child support purposes; the issue is whether the obligor receives "any form of payment" from the trust. *See Knudson*, 2018 ND 199, ¶ 26; *see also Mencer v. Ruch*, 2007 PA Super 182, ¶ 13, 928 A.2d 294 (holding the fact a beneficiary does not have control over the receipt of trust funds is not pertinent to whether it is considered income for child support). Other states have held if a parent does not receive income from a trust, it may not be used in child support calculations. *See, e.g., Lipic v. Lipic*, 103 S.W.3d 144, 151 (Mo. Ct. App. 2003) (holding trial court did not err in excluding trust income from a parent's gross income when the parent did not receive income from the trust); *Grohmann v. Grohmann*, 525 N.W.2d 261, 263 (Wis. 1995) (holding a court may consider trust income when a parent, as the grantor of a trust, receives income from the trust and reports the income on their individual tax returns). A court may need to consider the language of the trust to determine whether the parent receives "any form of payment" from the trust. *See Lewis v. Dep't of Soc.*

*Servs.*, 61 S.W.3d 248, 256 (Mo. Ct. App. 2001) ("Whether the income from a trust should be included in determining the appropriate amount of child support depends upon the type of trust involved and the intent of the settlor.").

[¶14] Brett Kingstone argues he lacks access to, and does not receive income from, the irrevocable trusts, and that the district court improperly included the income from the trusts "simply because it was listed on [his] personal tax return." Brett Kingstone had the burden of providing adequate evidence to support his argument the income from the irrevocable trusts should be excluded or treated differently. Yet Brett Kingstone did not present any documents of the irrevocable trusts to the court. At oral argument, Brett Kingstone stated he provided Trisa Tedrow Kingstone with binders containing the "trust agreements" before they got married, but acknowledged he only offered some of the trust documents to the court as evidence. The irrevocable trusts' documents are not in the record. Brett Kingstone provided the court with the trust agreement from his revocable trust but not for either of the irrevocable trusts.

[¶15] Brett Kingstone also did not provide the district court with evidence of his income. The court explained that, before the interim order hearing, "Brett did not file an itemized financial statement." *See* N.D.R.Ct. 8.2(d)(3)(A) ("The declarations and itemized financial statement of the moving party must be served and filed no later than 21 days prior to the hearing."). The court further explained, "The only evidence of Brett's income before the Court at the time of issuance of the Interim Order was the evidence presented by Trisa." After the trial, the court again stated, "Brett did not provide child support calculations with him as the obligor."

[¶16] "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75-02-04.1-02(7). In this case, Brett Kingstone did not provide to the district court the necessary evidence to support his claim regarding income from the irrevocable trusts. As a result, the court only had before it the financial statements provided by Trisa Tedrow Kingstone and Brett Kingstone's tax returns listing the irrevocable trusts. *See Devine v. Hennessee*, 2014 ND 122, ¶ 13, 848 N.W.2d 679 ("The court could only rely on [the party's]

5

telephonic testimony and affidavit to determine her income" when the party "did not provide documentation of her discharge, current income, medical disability, or retirement pay."); *Shull v. Walcker*, 2009 ND 142, ¶ 14, 770 N.W.2d 274 ("[A] decision to submit only certain evidence at a stage in the proceedings generally cannot later constitute exceptional circumstances justifying relief from a judgment." (quoting *Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, ¶ 10, 609 N.W.2d 90)). Thus, the court's reliance on Brett Kingstone's tax returns was within its discretion as factfinder.

[¶17] We conclude the district court did not err in including the irrevocable trust income in its child support calculation where the obligor did not provide evidence of the irrevocable trusts' documents.

B

[¶18] Brett Kingstone claims the district court improperly included income derived through nonrecurring capital gains.

[¶19] The child support guidelines define "gross income" to include "income from any source" but excludes "[n]onrecurring capital gains[.]" N.D. Admin. Code § 75-02-04.1-01(4)(a)(6); *see also Gerving v. Gerving*, 2022 ND 2, ¶ 15, 969 N.W.2d 184 (stating "[t]he child support guidelines specifically exclude nonrecurring capital gains from an obligor's gross income"). The Department of Human Services explained its decision to exclude nonrecurring capital gains, stating, "[A]lthough a capital gain is treated as income for tax purposes, the cash received is more in the nature of an asset than income and, accordingly, should not be includible in gross income for guidelines purposes." N.D. Dep't Human Servs., *Summary of Comments Received in Regard to Proposed Amend. to N.D. Admin. Code ch. 75-02-04.1 Child Support Guidelines*, 1 (April 7, 2015).

[¶20] On appeal, Brett Kingstone argues "the District Court included capital gains from [his] sporadic yearly sale of roughly one real estate transaction as he was winding up his business getting ready for retirement[.]" He further asserts his "tax returns indicate that such capital gains occurred at a rate of roughly one sale a year and no new real estate investment over the past five years, with significant gains realized in only two of those years."

6

[¶21] The district court determined Brett Kingstone's capital gains were recurring. The court found "Brett had significant capital gains income in 2017, 2018, 2019, 2020, and 2022. Thus, significant capital gains in 5 of the 6 years of tax returns." The court noted Brett Kingstone has consistently engaged in the buying, selling, and development of real estate properties. According to Magnus's tax summary, capital gains for taxpayers "in the realm of real estate" often appear in the form of long-term capital gains and Form 4797 gains from the sale of business property. The tax summary suggests Brett Kingstone received long-term capital gains in 2017, 2018, 2019, 2020, and 2022, as well as the capital gains from the sale of business assets in 2017, 2018, 2019, and 2022. "Therefore," the court found, "Brett's capital gains income is recurring." The court concluded that "[b]ecause Brett's capital gains income is recurring then it must be considered 'gross income' and included within the child support calculation."

[¶22] We hold the district court's finding Brett Kingstone's capital gains are recurring is not clearly erroneous because there is evidence to support it. We conclude the court did not err in considering Brett Kingstone's recurring capital gains when calculating his child support obligation.

IV

[¶23] Brett Kingstone argues the district court erred in ordering an upward deviation of his child support obligation.

A

[¶24] The amount of child support calculated using the North Dakota Child Support Guidelines is presumed to be the correct amount. N.D. Admin. Code § 75-02-04.1-09(1). However, the amount can be rebutted "if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported [child] and" one criteria provided in N.D. Admin. Code § 75-02-04.1-09(2) is met. *See Verhey v. McKenzie*, 2009 ND 35, ¶ 14, 763 N.W.2d 113 ("The exclusive list of the criteria for rebutting the presumption is listed at N.D. Admin. Code § 75-02-04.1-09(2)."). "The party requesting a deviation from the presumptive amount of support under the guidelines bears the burden of proof." *Schwalk v. Schwalk*, 2014 ND 13, ¶ 22, 841 N.W.2d 767. The district court must

make specific findings demonstrating why the guideline amount has been rebutted. *Keita v. Keita*, 2012 ND 234, ¶ 16, 823 N.W.2d 726; *Verhey*, ¶ 14.

B

[¶25] The district court deviated from the guidelines citing N.D. Admin. Code § 75-02-04.1-09(2)(b), (d), (f), and (h).

1

[¶26] A district court may deviate from the guidelines under N.D. Admin. Code § 75-02-04.1-09(2)(b) if it finds that the deviation is in the best interest of the supported child and:

> The increased ability of an obligor, with a monthly net income which exceeds twenty-five thousand dollars, to provide additional child support based on demonstrated needs of the child, including, if applicable, needs arising from activities in which a child participated while the child's family was intact[.]

A court may deviate from the guidelines under section 75-02-04.1-09(2)(d) if it finds that the deviation is in the best interest of the supported child and the child has "increased needs" due to "disabling conditions or chronic illness."

[¶27] Addressing N.D. Admin. Code § 75-02-04.1-09(2)(b), the district court found Brett Kingstone "has a monthly net income which exceeds $25,000 and has the ability to provide additional child support. His net monthly income was calculated to near or above $120,000.00." The court then found L.R.K. "has increased demonstrated needs." It explained:

> L.R.K. has been diagnosed with hemophilia and Fragile X and has developmental and speech delays. L.R.K.'s health conditions and delays have resulted in emergency room visits, many medical provider visits and appointments, extensive therapy, and pre-school education. This results in extra costs and expenses for the primary parent. Because of L.R.K.'s developmental delays and health conditions, there is a demonstrated need for additional child support.

[¶28] Addressing N.D. Admin. Code § 75-02-04.1-09(2)(d), the district court found L.R.K. has increased needs arising from her hemophilia, Fragile X syndrome, developmental delays, and speech delays. The court further found L.R.K.'s conditions have resulted in "significant additional costs" for Trisa Tedrow Kingstone, including "medical bills, travel costs, medicine costs, missed work, doctor/hospital care costs, therapy costs, and the need for care providers that take into consideration and provide the special attention necessary for L.R.K." The court explained, "L.R.K.'s conditions will not be going away and these are very likely to be lifelong conditions." The court further noted Trisa Tedrow Kingstone "claimed that such expenses result in a $2,000.00 per month cost to her."

[¶29] Under N.D. Admin. Code § 75-02-04.1-09(2)(b), when the obligor's monthly net income exceeds $25,000, the district court "must make a further inquiry to determine an amount appropriate to the needs of the children and the ability of the parent to pay." *Nuveen v. Nuveen*, 2012 ND 260, ¶ 7, 825 N.W.2d 863 (quoting *Montgomery v. Montgomery*, 481 N.W.2d 234, 235 (N.D. 1992)). "[T]he 'needs' addressed by child support are the children's 'appropriate needs.'" *Id.* (quoting *Montgomery*, at 236).

[¶30] Section 75-02-04.1-09(2)(d), N.D. Admin. Code, "allows a deviation from the presumptively correct child support amount for the 'increased needs' of a child with a disabling condition or chronic illness." *Jarvis v. Jarvis*, 1998 ND 163, ¶ 21, 584 N.W.2d 84. "Increased needs" can include extraordinary or unexpected health care needs. *Id.* ¶ 22. It can also include extraordinary educational costs. *Entzie v. Entzie*, 2010 ND 194, ¶¶ 27, 29, 789 N.W.2d 550 (affirming district court's finding child's supplemental education warranted an upward deviation from the guidelines).

[¶31] Here, the district court found L.R.K. has increased needs due to her health conditions (hemophilia and Fragile X syndrome) and her developmental and speech delays. It concluded L.R.K.'s health conditions and delays result "in extra costs and expenses for the primary parent," creating "a demonstrated need for additional child support."

[¶32] The district court's finding L.R.K. has increased needs due to her health conditions and delays is supported by the record. However, the court failed to explain or make explicit findings demonstrating why the upward deviation from the child support obligation is in the best interest of L.R.K. and why it ordered an upward deviation of $1,500 a month.

[¶33] The district court's findings identify past medical expenses and preschool education. Brett Kingstone argues L.R.K.'s medical expenses will be reduced or eliminated now that L.R.K. has been diagnosed and is on medication. He points out there is no expert testimony regarding L.R.K.'s future medical needs and related costs.

[¶34] The district court did not make findings about L.R.K.'s future medical needs and costs. Although "a line-by-line accounting of the needs of the [child] is unnecessary," the court must make sufficient "need-based fact finding" for this Court to review whether the amount of additional child support is based on the child's demonstrated needs. *Shae v. Shae*, 2014 ND 149, ¶ 8, 849 N.W.2d 173. The court also made no findings about additional educational costs due to L.R.K.'s needs. The court notes Trisa Tedrow Kingstone "claimed that such expenses result in a $2,000.00 per month cost to her." But the court's order lacks explanation or quantification of how it arrived at the upward deviation amount. The absence of detailed findings in the court's calculation leaves this Court unable to properly assess the reasonableness of the deviation amount. Section 75-02-04.1-09(2), N.D. Admin. Code, "cannot be applied unless those findings are made." *Martire v. Martire*, 2016 ND 57, ¶ 17, 876 N.W.2d 727 (concluding the district court erred when it made an upward deviation of child support without making findings about the appropriate needs of the child).

[¶35] Moreover, except for preschool education, L.R.K.'s identified needs relate to medical care. But the judgment orders Brett Kingstone to provide medical insurance for L.R.K. and to pay all of L.R.K.'s uncovered medical costs. The court does not explain how L.R.K.'s medical condition "results in extra costs and expenses for the primary parent" when Brett Kingstone must pay all of L.R.K.'s medical costs.

[¶36] We conclude the district court's findings are insufficient to support its upward deviation in the child support obligation under N.D. Admin. Code § 75-02-04.1-09(2)(b) and (d). "A district court errs as a matter of law when it fails to make required findings or when the required findings are not intelligible." *L.C.V. v. D.E.G.*, 2005 ND 180, ¶ 11, 705 N.W.2d 257. "Where the court does not clearly set forth how its child support decision is in compliance with the child support guidelines, or why it has decided to deviate therefrom, it is appropriate to remand for additional findings and a redetermination of the issue." *Id*. Therefore, we reverse the court's judgment awarding an upward deviation of Brett Kingstone's child support obligation under section 75-02-04.1-09(2)(b) and (d) and remand for additional findings of fact and a redetermination of the issue.

2

[¶37] A district court may deviate from the guidelines under N.D. Admin. Code § 75-02-04.1-09(2)(f) if it finds by a preponderance of the evidence that the deviation is in the best interest of the supported child and "[t]he increased needs of children related to the cost of child care, purchased by the obligee, for reasonable purposes related to employment, job search, education, or training[.]" "An obligee's child care expenses due to full-time employment are not factors considered by the guidelines, and may be used to support an upward deviation from the guidelines' presumptively correct support amount, if it is in the children's best interests." *Reinecke v. Griffeth*, 533 N.W.2d 695, 701 (N.D. 1995) (cleaned up).

[¶38] Addressing N.D. Admin. Code § 75-02-04.1-09(2)(f), the district court found Trisa Tedrow Kingstone "has not incurred costs of child care," but "has lost time being at her employment, resulting in lost income due to providing care for L.R.K."

[¶39] Section 75-02-04.1-09(2)(f), N.D. Admin. Code, authorizes an upward deviation based on "increased needs of children related to the cost of child care, purchased by the obligee[.]" The language requires a finding of actual expenditures by the obligee for child care services, not a reduction in work hours. *See Lawrence v. Delkamp*, 1998 ND 178, ¶ 7, 584 N.W.2d 515 (adding half the

11

obligee's monthly child care expenses to the support obligation); *Reinecke*, 533 N.W.2d at 701 (allowing upward deviation when obligee has a "substantial day-care expense"); *Perala v. Carlson*, 520 N.W.2d 839, 842-43 (N.D. 1994) (the cost of childcare includes "the purchased cost of child care by paid sitters").

[¶40] The district court's finding Trisa Tedrow Kingstone "has not incurred costs of child care" is contrary to the required finding for an upward deviation under N.D. Admin. Code § 75-02-04.1-09(2)(f). Based on that finding, we conclude the court erred as a matter of law in awarding an upward deviation of Brett Kingstone's child support obligation under N.D. Admin. Code § 75-02-04.1-09(2)(f).

3

[¶41] A court may order an upward deviation of a parent's child support obligation under N.D. Admin. Code § 75-02-04.1-09(2)(h) if the court finds a deviation is in the best interest of the supported child and "[t]he increased ability of an obligor, who is able to secure additional income from assets, to provide child support[.]" "Before using this provision to deviate upwards from the presumptively correct amount of child support, the court must state such income is a deviation and make explicit findings on the best interests of the children and the obligor's ability to secure additional income from assets." *Thompson*, 2018 ND 142, ¶ 19 (quoting *Entzie*, 2010 ND 194, ¶ 22).

[¶42] Addressing N.D. Admin. Code § 75-02-04.1-09(2)(h), the district court found Brett Kingstone "has the increased ability to support an upward deviation in the child support obligation." "If necessary," the court found, Brett Kingstone "has the increased ability to secure additional income from his significant assets." The court noted several of Brett Kingstone's non-liquid assets, including his three homes, industrial properties, business entities, and luxury vehicles as assets Brett Kingstone may use to secure additional income.

[¶43] The district court's finding Brett Kingstone has an increased ability to support is supported by the record. However, other than referring to "the child's increased needs," the court made no finding why a deviation under N.D. Admin.

Code § 75-02-04.1-09(2)(h) is in the best interest of L.R.K. or why a $1,500 upward deviation in child support is an appropriate amount.

[¶44] We conclude the district court's findings are insufficient to support its upward deviation in the child support obligation under N.D. Admin. Code § 75-02-04.1-09(2)(h). Therefore, we reverse the court's judgment awarding an upward deviation of Brett Kingstone's child support obligation under section 75-02-04.1-09(2)(h) and remand for additional findings of fact and a redetermination on the issue.

V

[¶45] Brett Kingstone argues the district court erred in ordering him to maintain a $750,000 life insurance policy for L.R.K., asserting it exceeds the reasonable security for child support obligations.

[¶46] The district court cited to N.D.C.C. § 14-08.1-03 to support its order for a life insurance policy. Section 14-08.1-03 reads:

> In order to enforce an obligation for the support of a child under section 14-08.1-01, the court may make suitable provision for the future care or support of the child, require reasonable security for payments required under this chapter, and enforce the obligation by attachment, garnishment, or by other appropriate remedies, including proceedings under chapter 14-08 as nearly as may be.

[¶47] Section 14-08.1-03, N.D.C.C., allows a district court to order an obligor to maintain a life insurance policy as reasonable security for child support payments. *Seay v. Seay*, 2012 ND 179, ¶ 9, 820 N.W.2d 705. The statute does not create additional child support, but a separate responsibility beyond the child support obligation to provide reasonable security for future support obligations. *Id*. ¶ 10. The district court concluded the "[s]ecurity of Brett [Kingstone]'s financial obligations for L.R.K. would be appropriate and financially feasible for Brett."

[¶48] Brett Kingstone claims the life insurance policy for L.R.K. "imposes an unnecessary financial burden" on him. He further asserts the life insurance

policy "exceeds the reasonable security for [his] child support obligations . . . given the substantial financial provisions already in place." Brett Kingstone states he "has made significant financial safeguards for L.R.K.," including contributions to a college savings plan and UTMA account.

[¶49] The district court found it is "appropriate and financially feasible" for Brett Kingstone to secure his child support obligations for L.R.K. by establishing and maintaining a life insurance policy "for the benefit of L.R.K. in the sum of no less than $750,000.00." We note a college savings plan, UTMA account, and life insurance policy each serve different financial purposes. The college savings plan and UTMA account do not provide the same protections for L.R.K. as a life insurance policy.

[¶50] Due to L.R.K.'s age, increased needs, and Brett Kingstone's financial status, we conclude the district court did not abuse its discretion in ordering Brett Kingstone to maintain a life insurance policy for L.R.K. However, the court's order that the policy be "in the sum of no less than $750,000.00" was based on the order Brett Kingstone pay child support in the mount of $5,000 per month. That amount may change on remand. Thus, we direct the court to reconsider the amount of the insurance policy on remand based on its redetermination of whether an upward deviation of child support is appropriate.

VI

[¶51] Brett Kingstone argues the district court erred in refusing to amend the judgment concerning the exchange provisions for L.R.K.

[¶52] Brett Kingstone filed a motion to clarify or amend the judgment requesting, among other things, that the district court "clarify/modify the judgment at paragraph 17 to allow [him] to choose the exchange location" or to require "Trisa Tedrow Kingstone [to] deliver L.R.K. to the connecting airport in North Dakota for pick up by Brett" and to "pick up L.R.K. from Brett at the connecting airport in North Dakota." After a hearing, the court denied the motion to amend the judgment and granted the motion to clarify the judgment. The court clarified that "the default exchange location" is L.R.K.'s home and that

14

the "alternate pick up/drop off at nearby airport" requires "a mutual agreement between the parties."

[¶53] Under Rule 59, N.D.R.Civ.P., a court may alter or amend a judgment upon motion after notice of entry of a judgment. N.D.R.Civ.P. 59(j). A party moving to amend a judgment under Rule 59 bears a heavy burden "to show sufficient grounds for disturbing the final judgment and relief will only be granted in exceptional circumstances." *Richardson v. Richardson*, 2022 ND 185, ¶ 3, 981 N.W.2d 907 (quoting *Schmidt v. Hageness*, 2022 ND 179, ¶ 9, 981 N.W.2d 120). We review a district court's decision on a motion to amend its judgment under an abuse of discretion standard. *Flaten v. Couture*, 2018 ND 136, ¶ 27, 912 N.W.2d 330. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id*.

[¶54] Brett Kingstone's brief in support of his motion did not cite to N.D.R.Civ.P. 59(j), nor did he argue grounds for disturbing the final judgment. The district court denied the motion to amend, stating Brett Kingstone's brief "fails to cite any law supporting a modification of the judgment, and as such, that portion of the motion is deemed abandoned." The court also explained the burden that would be placed on Trisa Tedrow Kingstone if Brett Kingstone was allowed "to make the unilateral decision that the pick up and drop off will occur at an airport[.]" We conclude the court did not misinterpret or misapply the law, or otherwise abuse its discretion, in concluding Brett Kingstone did not meet his heavy burden of showing grounds to disturb the judgment. We also conclude the court did not err in granting the motion to clarify the judgment. *See Matter of Curtiss A. Hogen Tr. B*, 2020 ND 71, ¶ 14, 940 N.W.2d 635 ("Clarification of a judgment is appropriate when the judgment fails to specify some particulars, and uncertainties in the decree arise from subsequent events." (quoting *Hoverson v. Hoverson*, 2017 ND 27, ¶ 6, 889 N.W.2d 858)); *Orvedal v. Orvedal*, 2003 ND 145, ¶ 4, 669 N.W.2d 89 ("When a judgment is vague, uncertain, or ambiguous, the court may clarify the judgment.").

## VII

[¶55] We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or are without merit. We affirm, in part, the district court's judgment. We reverse the portions of the court's judgment relating to the upward deviation of the child support obligation, and remand for additional findings of fact and a redetermination on whether an upward deviation of the child support obligation is appropriate under N.D. Admin. Code § 75-02-04.1-09(2)(b), (d), or (h).

[¶56] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr