[No. 26466-4-I. Division One. December 10, 1990.]

*In the Matter of the Marriage of* WALTER A. DORTCH, *Appellant, and* SANDRA M. STRAKA, *Respondent.*

774

*Gary T. Jones,* for appellant.

*Elizabeth Balas, Karlene Weiland,* and *Balas & Weiland,* for respondent.

PEKELIS, J.—Walter A. Dortch appeals an order modifying the decree of dissolution which increased his child support and child care payments to Sandra M. Straka for support of their two minor children. Dortch contends that the order is defective because the trial court erred in including his cost of living allowance in his gross income,

incorrectly computing Straka's income, failing to consider the impact of schooling and visitation on day–care costs, failing to compute long distance transportation expenses for visitation, and failing to complete necessary worksheets.

I

In January of 1986 the trial court entered a decree of dissolution of marriage dissolving the marriage of Walter A. Dortch and Sandra M. Straka. Apparently, at that time Dortch lived on Vashon Island, Washington, and Straka lived in Bellingham, Washington. The decree awarded Straka custody of the couple's two minor children and required Dortch to pay $335 per month child support and $103 per month child care costs. The decree set out Dortch's visitation as 3 days every 2 weeks, Friday at 5 p.m. until Monday at 5 p.m., corresponding to Straka's work schedule. It also provided for shared holiday time and appropriate summer visitation. Because the visitation periods markedly decreased child care costs, the decree required Dortch to reimburse Straka for any unanticipated child care costs incurred if he failed to exercise specified visitation.

In June of 1989 Straka filed a petition for modification of child support. Straka requested an increased amount of child support due to a substantial change in circumstances. Specifically, she claimed that because the United States Forest Service had promoted and transferred Dortch to Ketchikan, Alaska, his salary would increase and he would no longer be available to personally provide child care. In July of 1989 Dortch filed a response agreeing that child support should be modified to some degree due to changed circumstances. However, Dortch also filed an affidavit requesting the court to determine child support and care based on each parent's income, and "residential arrangements for the children based on the capabilities of the parties to provide a stable and nurturing environment taking into consideration the relationship of the children to each parent."

In November of 1989 the court held a hearing.[1] The court expressly declined to address visitation or custody and instead advised the parties to agree on these issues or to set a trial date. The court then proceeded to the support issue, using standards, worksheets, and a schedule developed by the Washington State Child Support Schedule Commission and adopted by the Legislature. *See generally* RCW 26.19.001–.060.

The court first computed child support payments according to worksheet A. The court calculated Dortch's total gross monthly income by adding his monthly salary and the monthly cost of living allowance to which he is entitled as a federal employee stationed in Alaska.[2] *See* 5 U.S.C. § 5941. This allowance is based on: living costs which are substantially higher than those in the District of Columbia, or else on conditions which differ substantially with conditions in the continental United States and warrant an allowance as a recruitment incentive, or both of these factors. *See* 5 U.S.C. § 5941.

Presumably, the court relied on Straka's pay stub ending May 14, 1989, to compute her total gross monthly income. That pay stub lists her gross pay year to date as $18,095.95. That figure divided by 4½ months equals an average gross monthly income of $4,021.32. The trial court, however, entered only $3,290.00 under Straka's gross income. Dortch, on the other hand, asserts that Straka's gross monthly income is $4,250. The court then deducted total monthly deductions from total gross income, arrived at a monthly net income, and computed each parent's support obligation according to their proportional share of the combined net income.

---

[1] Due to a recording malfunction the proceedings could not be transcribed, thus there is no record of the hearing.

[2] Monthly gross income ($2,881.67) plus cost of living allowance ($721.17) equals total monthly gross income ($3,602.84).

Next, the trial court computed day–care expenses according to worksheet A. In her affidavit Straka states that she works approximately 16 days per month. She also states that when she worked weekends Dortch cared for the children and when he was not available her mother cared for the children. For the past 5 years Straka has paid her mother $40 per day for child care. Apparently, the trial court relied on Straka's affidavit and computed day–care expenses as follows: 16 days at $40 per day equals $640 per month. Accordingly, the court entered this figure under day–care expenses on worksheet A. The court then computed each parent's total day–care obligation according to his or her proportional share of income.

In sum, under worksheet A, the trial court concluded that Dortch's monthly support obligation equaled $684.20 and his monthly obligation for the children's day–care expenses equaled $352. The trial court entered an order modifying the decree of dissolution and requiring Dortch to pay $1,036.20 for child support and child care, effective July 1, 1989. The court also noted that in all other respects the terms and conditions set forth in the January 1986 decree of dissolution remained in full force and effect.

II

On appeal, Dortch first contends that the trial court violated the supremacy clause of the United States Constitution by including his federal cost of living allowance in his gross income when computing his child support obligation under the applicable Washington worksheets and schedule. Dortch asserts that including his allowance in his gross income results in a direct conflict with the federal purpose of compensating workers for the high cost of living and conditions they face in Alaska.

Federal preemption applies only where state law does "'major damage'" to "'clear and substantial'" federal interests. *In re Marriage of Correia,* 47 Wn. App. 421, 424, 735 P.2d 691 (1987) (quoting *Ridgway v. Ridgway,* 454 U.S.

46, 54, 70 L. Ed. 2d 39, 102 S. Ct. 49 (1981)). "In Washington, there is a strong presumption against finding preemption." *Department of Labor & Indus. v. Common Carriers, Inc.,* 111 Wn.2d 586, 588, 762 P.2d 348 (1988). Generally,

> [p]reemption may be found only if federal law "clearly evinces a congressional *intent* to preempt state law", or there is such a "'direct and positive'" conflict "that the two acts cannot 'be reconciled or consistently stand together' . . .".

*In re Marriage of Peacock,* 54 Wn. App. 12, 14, 771 P.2d 767 (1989) (quoting *Common Carriers, Inc.,* 111 Wn.2d at 588).

Dortch does not argue that there is evidence of congressional intent for 5 U.S.C. § 5941 to preempt Washington law pertaining to child support. Instead, he argues that a direct conflict exists, relying on several United States Supreme Court cases to support his contention that federal law preempts Washington's family law with respect to child support payments. We find them distinguishable.

*Ridgway v. Ridgway, supra,* concerned a federal law which bestowed on a veteran the absolute right to designate the policy beneficiary of his servicemen's group life insurance, and expressly shielded payments under the policy from seizure under any legal process before receipt by the beneficiary. 454 U.S. at 59–60. The Court reversed the trial court's order placing the policy proceeds in trust for the children from the veteran's first marriage where his second wife was his designated beneficiary. 454 U.S. at 60. The Court noted that two specific provisions of the relevant act were inconsistent with the trial court's actions. 454 U.S. at 56. In *McCarty v. McCarty,* 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981)[3] the Court concluded that federal law precluded the state trial court from dividing an officer's military retired pay under California's community property law. 453 U.S. at 235–36. The Court based its decision on the fact that the community property laws were in direct conflict with the federal statute which explicitly instructed

---

[3]This case has been superseded by statute. *See In re Thomas,* 47 Bankr. 27 (Bankr. S.D. Cal. 1984).

that military retired pay be considered a personal entitlement payable to the retired member. 453 U.S. at 224.

 Unlike *Ridgway* and *McCarty,* which involved a direct conflict between a federal act and state law, we conclude that including a federal cost of living allowance in gross income for purpose of computing a parent's child support obligation does not result in a direct and irreconcilable conflict with the federal purpose of compensating workers for the high cost of living and conditions they face in Alaska. Therefore, we hold that the federal cost of living allowance does not preempt Washington's child support law.

### III

We next consider whether under applicable state law the trial court erred in including Dortch's cost of living allowance in his gross income.

In any proceeding in which child support is at issue the trial court must use the schedule adopted under former RCW 26.19.040 and worksheets approved by the commission. Former RCW 26.19.020(1)(a), (4). In computing Dortch's gross monthly income under worksheet A, the court considered his salary and his cost of living allowance.

The standards for the determination of child support, paragraph 3, define gross income as follows:

Monthly gross income shall include income from any source: salaries, wages, commissions, deferred compensation, bonuses, overtime, dividends, interest, trust income, severance pay, annuities, capital gains, social security benefits, workers compensation, unemployment, disability insurance benefits, gifts and prizes.

Washington State Child Support Schedule Comm'n, *Washington State Child Support Schedule* 2 (Sept. 1990).

 By defining "gross income" as including income from "any source," the standards allow a court to have before it all of the facts relevant to the parties' financial circumstances when deciding whether to modify child support payments. However, the child support schedule is presumptive and paragraph 12 expressly provides for deviation

from the schedule for various reasons, including, "a significant disparity in the living costs of the parents due to conditions beyond their control". *Washington State Child Support Schedule,* at 3.

We conclude that Dortch's cost of living allowance is properly considered part of his "gross income" as that term is defined in the standards. We note, however, that the high cost of living in Alaska is a consideration which may warrant a deviation from the support schedule under paragraph 12. Accordingly, we remand for the trial court to consider whether the high cost of living in Alaska warrants such deviation.

## IV

Dortch next contends that the trial court erred in computing his child support and child care payments by incorrectly computing Straka's monthly gross income.

The trial court completed worksheet A and attached it to its order, therefore we can see that the trial court computed Straka's monthly gross income to be $3,290. However, the court did not make findings of fact indicating how it arrived at this figure. As discussed previously, this figure is inconsistent with Straka's 1989 pay stub (gross pay year to date $18,095.95 divided by 4½ months equals $4,021.32). Based on the record before us, we cannot determine how the trial court arrived at this figure. Therefore, we instruct the trial court to recalculate Straka's monthly gross income on remand.

## V

Dortch next contends that the trial court erred in computing his child support and child care payments by failing to consider the impact of schooling and visitation on day–care costs, failing to compute long distance transportation expenses for visitation, and failing to complete necessary worksheets.

We agree with Dortch's contention that the trial court erred in failing to consider visitation and in failing to allocate long distance transportation expenses. Presumably,

Dortch will be unable to comply with his original visitation schedule now that he lives in Alaska. Nonetheless, Dortch will continue to visit the children. At oral argument, counsel for the parties advised this court that the children spent approximately 4 weeks in Alaska this past year and that Dortch visited them in Washington occasionally. It appears that the parties have worked out a visitation schedule. If not, the trial court should resolve the visitation issue so that child care costs and long distance transportation expenses can be calculated accurately. In order to resolve all the interwoven issues of support, child care costs, and visitation, we instruct the trial court to complete worksheets B and C.

## VI

Finally, Straka requests reasonable attorney fees under RCW 26.09.140 and/or RCW 26.18.160. RCW 26.18-.160 allows costs and attorney fees to the prevailing party in an action to enforce a support order where the prevailing party is the obligee. Because this is an appeal of a modification order, not an action to enforce support, Straka's reliance on RCW 26.18.160 is misplaced. *See In re Marriage of Oblizalo*, 54 Wn. App. 800, 806, 776 P.2d 166 (1989).

Under RCW 26.09.140, this court "may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees". Yet, this court must balance the needs of one party against the other party's ability to pay. *Oblizalo*, 54 Wn. App. at 806. Here, Straka has not shown her need or Dortch's ability to pay. *See Oblizalo*, 54 Wn. App. at 806; *In re Marriage of Coons*, 53 Wn. App. 721, 722, 770 P.2d 653 (1989). Thus, we deny her request for attorney fees under RCW 26.09.140.

Affirmed in part. Reversed in part and remanded for determination of an appropriate visitation schedule, and for modification of child support and child care payments

based on the current support schedule and worksheets A, B, and C.

BAKER, J., concurs.
SCHOLFIELD, J., concurs in the result.