2006 ND 181

**Jean L. HAGEL, Plaintiff
and Appellant**

v.

**Scott B. HAGEL, Defendant
and Appellee.**

**No. 20050434.**

Supreme Court of North Dakota.

Aug. 21, 2006.

Joseph F. Larson II (on brief), Larson Law Firm, Jamestown, N.D., for plaintiff and appellant.

Scott B. Hagel, defendant and appellee; no appearance.

CROTHERS, Justice.

[¶ 1] Jean L. Hagel appeals from a divorce judgment challenging the district court's determination of the onset date of Scott B. Hagel's child support obligation and its denial of her request for spousal support. We reverse and remand for the district court to reconsider the onset date of child support and the request for spousal support and to provide adequate expla-

nations of its decisions on those matters, and we otherwise affirm the judgment.

I

[¶ 2] The parties were married in Jamestown in 1983. They have a son born in 1986 and a daughter born in 1988. Scott Hagel has been employed at Newman Signs since 1979 and has worked as a construction supervisor for the past 10 years. During the construction season, he is gone from home for the work week. Jean Hagel is a high school graduate who has worked at several jobs in the Jamestown area during the course of the marriage, mainly as a secretary and cashier. In 1989 the family moved to a farmstead near Ypsilanti where Scott Hagel raised cows. The couple separated in May 2001, and Jean Hagel left the farm with the children and moved to Jamestown. The children, for the most part, resided with Jean Hagel in Jamestown and attended school there during the separation.

[¶ 3] Jean Hagel commenced this divorce action in March 2004. The district court originally issued an interim order granting Jean Hagel primary physical custody of the son and joint physical custody of the daughter, but the order was amended in May 2004 by stipulation of the parties to grant Jean Hagel temporary primary physical custody of both children. Jean Hagel sought child support commencing on the date the parties separated, May 15, 2001, and in December 2004, the court ordered that Scott Hagel pay $864 per month for child support commencing April 1, 2004, with credit for $2,133 he had paid since that date. The court reserved "decision on the onset date of child support and what, if any, child support should be paid by Defendant from and after May 15, 2001."

[¶ 4] Following a trial, the district court in August 2005 awarded Jean Hagel

primary physical custody of the daughter and ordered that Scott Hagel pay $1,090 per month child support beginning March 2005, when the divorce trial was held, through May 2005, when the son graduated from high school. The court ordered the child support amount reduced to $701 per month beginning in June 2005. The court refused to order Scott Hagel to pay child support from the date of the parties' separation, May 15, 2001, through April 1, 2004, the date his child support obligation commenced under the interim order. The court awarded an equal amount of the approximately $142,000 net marital estate to each party, with Jean Hagel receiving mainly cash and Scott Hagel receiving mainly the income producing property. Although the court found Jean Hagel was a disadvantaged spouse, the court did not award her spousal support, but ordered that Scott Hagel pay $5,000 for her attorney fees.

## II

[¶ 5] Jean Hagel argues the district court erred in failing to require Scott Hagel to pay child support during the parties' almost three-year separation period preceding the divorce action.

[¶ 6] Throughout the interim proceedings and the divorce trial, Jean Hagel sought child support for the separation period under N.D.C.C. §§ 14–08–01, 14–08.1–01, and 14–09–08. Section 14–08–01(2), N.D.C.C., authorizes any married person to bring an action against the person's spouse to provide for "[t]he support of minor children by said husband or wife living with the party bringing suit." Section 14–09–08, N.D.C.C., places a duty upon parents to "give their children support and education suitable to the child's circumstances," and provides that a "court may compel either or both of the parents to provide for the support of their chil-

dren." Section 14–08.1–01, N.D.C.C., provides:

A person legally responsible for the support of a child under the age of eighteen years who is not subject to any subsisting court order for the support of the child and who fails to provide support, subsistence, education, or other necessary care for the child, regardless of whether the child is not or was not in destitute circumstances, is liable for the reasonable value of physical and custodial care or support which has been furnished to the child by any person, institution, agency, or county social service board. Any payment of public assistance money made to or for the benefit of any dependent child creates a presumption that such payment equals the reasonable value of physical and custodial care or support.

These statutes govern when there is an obligation to support, there is no court-ordered child support, and no support has been paid by the obligated person. *See Linrud v. Linrud,* 552 N.W.2d 342, 346 (N.D.1996). In determining a reasonable amount of reimbursement under these statutes, a court may, but is not required to, consider the Child Support Guidelines to estimate the appropriate amount a noncustodial parent should provide for the ongoing support and care of the child. *Krug v. Carlson,* 2000 ND 157, ¶ 10, 615 N.W.2d 564.

[¶ 7] We have said a district court's decision whether to award past child support is discretionary and will not be overturned on appeal unless the court has abused its discretion. *See Brandner v. Brandner,* 2005 ND 111, ¶ 21, 698 N.W.2d 259; *McDowell v. McDowell,* 2003 ND 174, ¶ 27, 670 N.W.2d 876; *Richter v. Houser,* 1999 ND 147, ¶ 17, 598 N.W.2d 193. However, under some circumstances, a failure to award interim child support may consti-

tute error as a matter of law. *See Acker-man v. Ackerman*, 1999 ND 135, ¶¶ 20–21, 596 N.W.2d 332; *cf. McDowell*, 2003 ND 174, ¶ 28, 670 N.W.2d 876 (amount of child support is set from date of motion to modify, "absent a good reason for not doing so"). Although Jean Hagel argues the abuse of discretion standard no longer applies because of the legislature's 1999 repeal of N.D.C.C. § 14–09–14 and amendment of N.D.C.C. § 14–17–14(4), *see* 1999 N.D. Sess. Laws ch. 141, §§ 12, 25, section 14–09–08, N.D.C.C., continues to provide that a court "may compel" a parent to provide support, and N.D.C.C. § 14–17–14(4) is part of the Uniform Parentage Act which is not applicable in this case. *See Krug*, 2000 ND 157, ¶ 5 n. 1, 615 N.W.2d 564. The word "may" is usually employed to imply permissive, optional, or discretional, and not mandatory, action or conduct. *City of Devils Lake v. Corrigan*, 1999 ND 16, ¶ 12, 589 N.W.2d 579.

[¶ 8] In denying the request for child support during the parties' separation, the district court said:

23.

The Court reserved its ruling on the onset date of the child support obligation of Scott. The parties separated in May, 2001, and Jean commenced this divorce action in March, 2004. The Court ordered Scott to pay child support of $864 as of April, 2004, in the Second Amended Interim Order. Scott made minimal effort to support the children during the period of separation. He gave them some cash, made minimal payments to Jean, assisted with car payments, and purchased some clothing. Jean also transferred $900 to her account for living expenses.

24.

The Court has the discretion to set the date of the commencement of the child support obligation. *Wigginton v. Wigginton*, 2005 ND 31, ¶ 13, 692 N.W.2d 108. It shall be the order of the Court that the child support obligation of Scott is retroactive to the month of the commencement of this action (March, 2004).

[¶ 9] A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law. *Kramer v. Kramer*, 2006 ND 64, ¶ 20, 711 N.W.2d 164. The facts recited by the court support an award of child support during the parties' separation. The only reason given by the court to deny the request is that it had "discretion" to set the date of the commencement of the child support obligation. A court's discretionary authority does not in itself establish that its decision is the product of a rational mental process leading to a reasoned decision. When, as here, the district court provides no indication of the evidentiary and theoretical basis for its decision and the basis is not otherwise ascertainable in the record, we are left to speculate whether factors were properly considered and the law was properly applied, leaving us unable to perform our appellate function. *Clark v. Clark*, 2005 ND 176, ¶ 9, 704 N.W.2d 847. We therefore must reverse the court's decision denying child support during the parties' three-year separation and remand for reconsideration and a reasoned explanation of the court's ruling.

III

[¶ 10] Jean Hagel argues the district court erred in denying her request for spousal support.

[¶ 11] In *Ulsaker v. White*, 2006 ND 133, ¶ 20, 717 N.W.2d 567, we recently explained:

Section 14–05–24.1, N.D.C.C., provides, "[t]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time." An award of spousal support is to be based on consideration of the *Ruff–Fischer* guidelines. *Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157; *Staley v. Staley*, 2004 ND 195, ¶ 8, 688 N.W.2d 182. A separate finding that a spouse is "disadvantaged" is not necessary for an award of spousal support. *Sack v. Sack*, 2006 ND 57, ¶¶ 11–12, 711 N.W.2d 157. We have recognized that a difference in earning power should be considered when determining spousal support. *Sommers v. Sommers*, 2003 ND 77, ¶ 17, 660 N.W.2d 586. Property division and spousal support ordinarily must be examined and dealt with together. *Id.* at ¶ 15.

Spousal support determinations are findings of fact, and the district court's decision on spousal support will not be set aside unless it is clearly erroneous. *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Thompson v. Olson*, 2006 ND 54, ¶ 10, 711 N.W.2d 226.

[¶ 12] The parties were each 44 years old at the time of the divorce trial and were in a long-term marriage. They have no apparent health problems. Jean Hagel raised the children and maintained the household while working full-time, and Scott Hagel pursued his career with Newman Signs. Historically, Jean Hagel has earned from employment roughly one-half of what Scott Hagel has earned. During 2004, Jean Hagel earned $30,079 and Scott Hagel earned $58,463.40, an amount which included $8,331.98 in imputed income. The court divided the net marital estate of $142,000 equally, awarding Jean Hagel mostly cash and Scott Hagel the income producing property.

[¶ 13] In its decision, issued before this Court's ruling in *Sack v. Sack*, 2006 ND 57, ¶¶ 11–12, 711 N.W.2d 157, the district court specifically found that Jean Hagel "meets the definition of a disadvantaged spouse." The court acknowledged our case law establishing that spousal support determinations must be made in light of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay and that support can be denied if no need for support is established, or the supporting spouse shows no ability to pay. *See, e.g., McDowell v. McDowell*, 2001 ND 176, ¶¶ 13, 17, 635 N.W.2d 139. The court found that because "Jean's income is limited, while Scott has both employment and a trucking business," and "Jean does not have the ability to pay her entire attorney's fees, and Scott does," it ordered Scott Hagel to pay Jean Hagel $5,000 of her attorney fees. In denying the request for spousal support, the court reasoned:

> Much of the award to Scott is property that may be income producing, while the award to Jean is mostly cash which she will have available to her. The Court considered this in making the property and debt distribution, and does not award spousal support to Jean.

[¶ 14] The court appears to have found Jean Hagel has a need for support, i.e. that she was "disadvantaged," and that Scott Hagel has the ability to pay support. These findings seem to support spousal support in some amount. Yet, the court also appears to have denied the request for spousal support because Jean Hagel's equal property distribution "is mostly cash

which she will have available to her." However, this Court has often said a spouse is not required to deplete a property distribution in order to live. *See, e.g., Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586; *Fox v. Fox*, 1999 ND 68, ¶ 24, 592 N.W.2d 541. We therefore reverse the district court's decision denying Jean Hagel's request for spousal support and remand for reconsideration or explanation rectifying the apparently conflicting holdings of the court. Because property division and spousal support are intertwined, the court may also reconsider its property division on remand. *See Striefel v. Striefel*, 2004 ND 210, ¶ 17, 689 N.W.2d 415.

## IV

[¶ 15] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 16] GERALD W. VANDE WALLE, C.J., DONALD L. JORGENSEN, D.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., CONCUR.

[¶ 17] The Honorable DONALD L. JORGENSEN, D.J., sitting in place of SANDSTROM, J., disqualified.