2014 ND 149

**Jerry SHAE, Plaintiff, Appellant, and Cross–Appellee**

v.

**Colette SHAE, Defendant, Appellee, and Cross–Appellant.**

No. 20130282.

Supreme Court of North Dakota.

July 17, 2014.

Sherry Mills Moore (argued), and David Michael Knoll (appeared), Bismarck, ND, for plaintiff, appellant and cross-appellee.

Rodney Ervin Pagel, Bismarck, ND, for defendant, appellee, and cross-appellant.

CROTHERS, Justice.

[¶ 1] Jerry Shae appeals a district court order for amended judgment on Colette Shae's motion to modify child support obligations, requiring Jerry Shae to pay $39,634.82 per month in child support, medical expenses for his children and Colette Shae's $24,959.46 in attorney fees. We conclude the district court's modified child support award was clearly erroneous and the district court incorrectly calculated Jerry Shae's 2012 net income. We reverse and remand.

I

[¶ 2] Jerry Shae and Colette Shae were divorced on February 2, 2011. They have three minor children and one adult child. Colette Shae was awarded primary residential responsibility of the children and assets including the parties' marital home in Bismarck, fifty acres of land in Burleigh County, mineral interests in Dunn and Stark Counties, her retirement account, $60,000 from Jerry Shae's retirement accounts and a $50,000 property equalization payment. Jerry Shae received substantial parenting time, a farm near Williston, real property in Williston and farm equipment. The parties agreed on the division of personal items. The settlement required Jerry Shae to pay $2,195 per month in child support for their four minor children. Jerry Shae was required to pay $1,978 per month support after their oldest child reached eighteen and graduated from high school or reached age nineteen, whichever came first. This child support award was based on Jerry Shae's salary of $95,108 as an engineer.

[¶ 3] Colette Shae moved to modify Jerry Shae's child support obligations.

Colette Shae sought an increase in child support to include Jerry Shae's unexpected income since the divorce, a modification requiring Jerry Shae to pay the children's healthcare costs and her attorney fees from her motion. The district court found Jerry Shae terminated his employment as an engineer in 2012 to devote himself full-time to the western North Dakota water-hauling business he started known as Northwest Water Transfer, LLC. Testimony revealed Jerry Shae actually terminated his employment as an engineer in mid–2011 to devote himself full-time to Northwest Water Transfer. The district court found Jerry Shae realized nominal income for the first few months of operating Northwest Water Transfer in 2011. The district court found Jerry Shae earned $2,366,534 in 2012 for his work with Northwest Water Transfer, sold his farm, realizing capital gains of $2,935,460, and purchased a replacement farm for $1,900,000. According to Jerry Shae's 2012 Form 1040, he earned $50,000 in wages, $522 in taxable interest, $172,380 in other gains and incurred farming losses of $148,224. Colette Shae earned $125,293 in 2012, consisting of $51,974 as a registered nurse, $37,338 in capital gains, $16,123 in mineral royalties and $19,858 in gambling winnings.

[¶ 4] The district court made findings on the minor children's expenses and the lifestyle they lead with each parent. The three minor children participate in a variety of athletic and non-athletic activities, and Colette Shae provides for participation fees, equipment fees, travel expenses and related costs. Colette Shae also pays auto insurance costs and driving expenses for their two older minor children. The home Colette Shae and the children reside in needs significant repairs beyond Colette Shae's financial capacity. The district court found Jerry Shae is able to provide an elevated lifestyle to his children, including vacations and expensive gifts. The district court found Colette Shae is unable to give the same amenities to the children because she provides for their necessities.

[¶ 5] The district court found a preponderance of the evidence established a deviation from the child support guidelines was warranted. The district court based Jerry Shae's elevated child support obligation on its calculation of his 2012 net monthly income of $116,573. The district court stated it applied the child support projection methodology used in *Martiré v. Martiré*, 2012 ND 197, 822 N.W.2d 450, to determine that thirty-four percent of $116,573 is $39,634.82 per month. The district court ordered the child support to be retroactive to July 2012, with arrearages to be paid by Jerry Shae at ten percent per month for ten consecutive months beginning on August 5, 2013. The district court's net monthly income calculation did not include capital gains Jerry Shae realized through selling the farm and the machinery because a significant portion was reinvested in a new farm, because Colette Shae granted Jerry Shae the farm with express consent and presumable knowledge of its value and because it was a one-time occurrence. The district court did not include as income the allegedly excessive salary of $97,033.87 Jerry Shae paid their eldest son, who works for Northwest Water Transfer as a bookkeeper and payroll clerk. The district court required Jerry Shae to pay Colette Shae's attorney fees of $24,959.46 for her motion. Jerry Shae stipulated to assuming the obligation to pay for their children's non-elective, non-covered medical costs. Jerry Shae appealed and Colette Shae cross-appealed.

## II

[¶ 6] This Court has stated:

"Child support determinations involve questions of law which are subject to the

de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support. The trial court's findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made."

*Lauer v. Lauer*, 2000 ND 82, ¶ 3, 609 N.W.2d 450 (internal citations omitted). "In cases where the obligor's monthly net income exceeds [the maximums provided by the guidelines], the court must make a further inquiry to determine an amount appropriate to the needs of the children and the ability of the parent to pay." *Montgomery v. Montgomery*, 481 N.W.2d 234, 235 (N.D.1992). "Pursuant to that inquiry, the trial court's determination of child support is a question of fact, and will not be set aside on appeal unless clearly erroneous." *Id.; see also Sherburne Cnty. Soc. Servs. on Behalf of Schafer v. Riedle*, 481 N.W.2d 111, 113 (Minn.Ct.App.1992) ("The trial court may not deviate from the guidelines unless it makes express findings on the reasons for departure.... [A]n obligor's high income alone will not support an upward departure from the guidelines."). For high income families, we find instructive language from the Kansas Court of Appeals, stating:

"In fixing the child support obligation of a high-income parent, the trial court must balance competing concerns. On the one hand ... a child is not expected to live at a minimal level of comfort while the noncustodial parent is living a life of luxury.... On the other hand, child support payments are not intended to be windfalls, but rather adequate support payments for the upbringing of the children."

*Matter of Marriage of Patterson*, 22 Kan. App.2d 522, 920 P.2d 450, 456 (1996) (citation omitted).

[¶ 7] Jerry Shae argues the district court erred by mechanically extrapolating from the child support guidelines an upward deviation in the amount of thirty-four percent of his net monthly income. Jerry Shae asserts the district court incorrectly interpreted *Martiré* to require the thirty-four percent multiplier. 2012 ND 197, 822 N.W.2d 450. *Martiré* stated:

"The Child Support Guidelines allow a district court to deviate upward from the presumptively correct child support amount in cases that involve an obligor that earns more than $12,500 per month. Under N.D. Admin. Code § 75–02–04.1–09(2)(b), the presumptively correct amount of child support is rebutted 'if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children and ... [t]he increased ability of an obligor, with a monthly net income which exceeds twelve thousand five hundred dollars, to provide child support.'"

2012 ND 197, ¶ 22, 822 N.W.2d 450 (internal citation omitted). The district court in *Martiré* used the rebuttal criteria in N.D. Admin. Code § 75–02–04.1–09(2)(b) to determine the evidence merited an upward deviation, and it applied a thirty-four per-

cent multiplier to increase the total monthly support by $1,877 for a total of $6,127 per month. *Martiré*, at ¶ 23. We concluded the district court's decision in *Martiré* contained sufficient findings to support the upward deviation from the presumptive amount and the findings were not clearly erroneous. *Id.* at ¶ 24.

[¶ 8] Later, in *Nuveen v. Nuveen*, we clarified the rule to be applied. 2012 ND 260, 825 N.W.2d 863. This Court recognized that the thirty-four percent multiplier was used in *Martiré* by applying "the percentage of income an obligor was required to pay for three children at the highest income level in the [child support] guidelines ... to the obligor's income." *Nuveen*, at ¶ 12. However, this Court does not simply affirm use of a multiplier without first determining that the district court decision contained sufficient findings supporting the upward deviation from the presumptively correct guideline amount and confirming that the district court findings were not clearly erroneous. *Id.* at ¶ 14; *see also Martiré*, 2012 ND 197, ¶¶ 23–24, 822 N.W.2d 450. We recognized in *Nuveen* that a line-by-line accounting of the needs of the children is unnecessary and "the 'needs' of a child in a family with substantial income are more expansive because of the standard of living the family has enjoyed." *Id.* at ¶ 13 (citation omitted). However, we also highlighted the importance of the district court's need-based fact finding and stated, "Nuveen fails to recognize ... the decisive role of the standard of review." *Id.* at ¶ 10.

[¶ 9] In *Nuveen*, we affirmed an upward deviation of $1,294 from the maximum presumptively correct guideline amount, concluding sufficient evidence supported a deviation in that amount. 2012 ND 260, ¶¶ 4, 15, 825 N.W.2d 863. If the multiplier had been blindly extrapolated from the maximum guideline amount in

*Nuveen*, as the thirty-four percent was applied in the present case for three children, the percentage would be 28.344 percent for two children, or greater than $11,900 per month for Nuveen's more than $42,000 monthly income. *Id.* at ¶ 3; N.D. Admin. Code § 75–02–04.1–10. The automatic application of a percentage multiplier to a high-income individual such as Nuveen would have yielded a result which this Court would have been reticent to accept.

[¶ 10] We addressed this issue again in *Hoverson v. Hoverson*, 2013 ND 48, 828 N.W.2d 510. There, the obligor had one child and a monthly income of $164,000. *Id.* at ¶ 19. The appellant in *Hoverson* argued the district court erred in awarding only a $900 per month upward deviation from the maximum child support guideline amount of $2,102. *Id.* We affirmed the district court in *Hoverson* because the appellant did not present evidence of the child's additional appropriate needs. *Id.* at ¶ 22. We determined the district court's child support award was not clearly erroneous based on its consideration only of the parties' monthly expenses and income. *Id.* In *Hoverson*, this Court again analyzed whether the district court's findings on appropriate needs of the child supported the upward deviation awarded, and we affirmed a deviation that did not apply an automatic percentage multiplier. *Id.* at ¶¶ 19–22.

[¶ 11] Nothing in *Martiré, Nuveen* or *Hoverson* has intended to indicate that any upward deviation from the guidelines can be made without considering the appropriate needs of the children. This Court's standard requires that a preponderance of the evidence demonstrates the best interests of the child merit an increase in child support beyond the maximum presumptively correct guideline amount and that the obligor's monthly in-

come is greater than $12,500. Nor do *Martiré, Nuveen* or *Hoverson* stand for the proposition that any formula or multiplier, much less a thirty-four percent multiplier, should be applied or that an upward deviation is permitted without the district court considering whether the facts and circumstances in a particular case merit an increase. It is especially important in cases where the obligor's monthly income is extremely high that a straight percentage not be used because the result frequently will be unrelated to the appropriate needs of the children. *See Schieffer v. Schieffer*, 2013 SD 11, ¶ 63, 826 N.W.2d 627, 645 (Konenkamp, J., concurring in part and dissenting in part) (In extraordinarily high income cases, "it would be unsuitable to order child support calculated purely by linear upward extrapolation from the income and support amounts listed in the guidelines.").

[¶ 12] The district court's child support award applied a thirty-four percent multiplier and contained insufficient findings regarding the children's appropriate needs. For the reasons we have articulated above, that child support award was clearly erroneous, and we reverse.

### III

[¶ 13] Jerry Shae argues his income was incorrectly determined because it failed to reflect his farming losses and used the wrong date for when he quit his position as an engineer. Jerry Shae further argues the district court did not include his wages, interest income and other gains in determining his net income. "The interpretation and proper application of a provision of the child support guidelines is a question of law, fully reviewable on appeal." *Becker v. Becker*, 2011 ND 107, ¶ 12, 799 N.W.2d 53 (citation omitted). A district "court errs as a matter of law when it fails to comply with ... the child support guidelines...." *Lauer*, 2000 ND 82, ¶ 3, 609 N.W.2d 450.

[¶ 14] Section 75–02–04.1–02(3), N.D. Admin. Code, states, "Net income received by an obligor from all sources must be considered in the determination of available money for child support." Net income is derived by determining a party's gross income and then allowing deductions as provided by N.D. Admin. Code § 75–02–04.1–01(6). Gross income means "income from any source, in any form[.]" N.D. Admin. Code § 75–02–04.1–01(4). Examples of gross income include salaries, wages, interest, gains and net income from self-employment, among other considerations. N.D. Admin. Code § 75–02–04.1–01(4)(b). The district court, however, only used Jerry Shae's 2012 Form 1040 line 17 royalty and S-corporation income of $2,366,534 to calculate the child support he owed. This sum ignores Jerry Shae's $50,000 in wages, $522 in taxable interest, $172,380 in other gains, $148,224 in farming losses and $2,935,460 in capital gains, which Colette Shae raises on cross-appeal. Jerry Shae's 2012 gross income on his Form 1040 was $5,376,672. On these facts alone the district court erred in applying the guidelines to determine Jerry Shae's income.

[¶ 15] Section 75–02–04.1–05(4), N.D. Admin. Code, outlines the determination of net income from self-employment for child support purposes:

"Self-employment activities may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income. When self-employment activity has not been operated on a

substantially similar scale for five years, a shorter period may be used."

Self-employment includes income from a business organization, rental properties, royalties, business gains, partnerships, trusts, corporations and any other activity considered self-employment by the Internal Revenue Code. N.D. Admin. Code § 75–02–04.1–01(10). Line 17 on Jerry Shae's tax returns show his self-employment income has not been undertaken on a similar scale for the previous five years: 2012, $2,366,534; 2011, $35,182; 2010, $40,951; 2009, $32,834; and 2008, $79,764. Jerry Shae's farming losses for the previous five years are: 2012, $148,224; 2011, $40,356; 2010, $956; 2009, $14,095; and 2008, $30,186. Therefore, even considering Jerry Shae's farming losses each year does not affect the conclusion that Jerry Shae's self-employment activities were not undertaken on a substantially similar scale because of 2012's significantly higher income. Because Jerry Shae's self-employment activities have not been operated on a substantially similar scale for the past five years, the district court correctly used the shorter period limited to 2012. However, the district court's findings were incorrect in stating the court only had the 2012 tax return to calculate Jerry Shae's income because the record includes Jerry Shae's tax returns back to 2008.

■ [¶ 16] Jerry Shae argues his farming losses should be considered in determining his 2012 income because it is a qualifying self-employment activity. Colette Shae argues this sum should be excluded because Jerry Shae's farm lost money each year reported and tax return losses can reduce an obligor's income only if losses were calculated for no more than forty percent of the years averaged under N.D. Admin. Code § 75–02–04.1–05(7). Colette Shae's argument misstates the law because N.D. Admin. Code § 75–02–04.1–05(6) and (7) restrict when loss may be applied to reduce income unrelated to self-employment. Here, however, the income used in the district court's calculations was solely self-employment income. Jerry Shae's farming losses should have been included in determining his net income from self-employment for the purposes of determining his gross income. The district court erred by failing to include Jerry Shae's farming losses of $148,224 in 2012.

■ [¶ 17] Jerry Shae's argument the district court committed a material error in finding he terminated his employment as an engineer in 2012 rather than mid-2011 is inconsequential. The nominal self-employment income of $340 Jerry Shae made while working full-time for Northwest Water Transfer was included in line 17 self-employment income for 2011 and was properly excluded for child support purposes because it was not substantially similar to 2012.

IV

■ [¶ 18] Colette Shae argues on cross-appeal that the district court erred in failing to enter a child support obligation that included Jerry Shae's nonrecurring income from the sale of real estate. Jerry Shae argues this issue is moot unless this Court affirms the district court's methodology for determining his child support. Jerry Shae's argument fails because the district court must determine Jerry Shae's net income before it determines the appropriate upward deviation from the presumptive guideline amount, whether or not it applies a standard formula or makes a more specific determination based on the children's needs and Jerry Shae's ability to pay. *See* N.D. Admin. Code § 75–02–04.1–02(3) ("Net income received by an obligor from all sources must be considered in the determination of available money for child support.").

[¶ 19] Gross income includes salaries, wages, interest, gains and net income from self-employment, among other considerations. N.D. Admin. Code § 75–02–04.1–01(4)(b). Colette Shae asserts the $2,935,460 in gains from the sale of farm land and $172,380 from the sale of machinery should have been included in Jerry Shae's income. This Court, in *Berge v. Berge*, addressed this issue:

"Under the child support guideline's all-inclusive definition of gross income, this Court has consistently held that nonrecurrent payments are includable in an obligor's income for determining child support. In *Otterson v. Otterson,* 1997 ND 232, ¶ 20, 571 N.W.2d 648, we held that proceeds from a personal injury settlement must be considered in calculating the obligor's income for child support purposes. In *Longtine v. Yeado,* 1997 ND 166, ¶ 9, 567 N.W.2d 819, we concluded that profits from an auction sale of farm machinery and the capital gain from insurance proceeds from a fire that destroyed the parties' former homestead must be considered in determining the obligor's child support income. In *Helbling v. Helbling,* 541 N.W.2d 443, 447 (N.D.1995), this Court concluded that excess reimbursed relocation expenses paid by the obligor's employer must also be considered under the broad definition of gross income contained in the child support guidelines. As we said in *Otterson,* at ¶ 17, the 'guidelines do not authorize a deduction for nonrecurrent payments, and our law and public policy dictate that children should share in the obligor's receipt of such payments.'

" 'Gross income' continues to be broadly defined under the current version of the guidelines as including 'gains.' N.D. Admin. Code § 75–02–04.1–01(5)(b). Nonrecurrent payments still are not listed as excludable under N.D. Admin. Code § 75–02–04.1–01(7).

"In *Longtine,* at ¶ 12, a majority of this Court construed N.D. Admin. Code § 75–02–04.1–02(8) to not require a different result than in *Helbling* for the treatment of nonrecurrent income. The referee in *Longtine,* at ¶ 4, had included the capital gain and profit from the auction sale, less a debt repayment on a depreciable asset from the auction proceeds, in the child support determination and increased the obligor's child support based on the nonrecurrent income for only a twelve-month period. The majority of the Court held the 'referee recognized the "likely future circumstances" that those proceeds were nonrecurring and increased Longtine's child support obligation for one year to provide his children with a benefit from those proceeds.' *Id.* at ¶ 13.

"It is unclear why the trial court excluded the 2001 and 2002 capital gains from the computation of Mark Berge's child support obligation. Neither the child support guidelines nor this Court's precedents allow nonrecurrent payments to be simply ignored in determining an obligor's child support obligation."

*Berge,* 2006 ND 46, ¶¶ 13–16, 710 N.W.2d 417.

[¶ 20] The district court here gave no more than a cursory explanation of why these sums were not included as income:

"At the time of the divorce of the parties in 2011, the Williams County farm was granted to [Jerry Shae] with express consent of [Colette Shae] who presumably had knowledge of its value at that time. The subsequent conversion of said asset some two years later by [Jerry Shae] and the reinvestment of a substantial portion of the sales price in substitute real estate is a one-time oc-

currence and should not be included for child support computation."

The district court excluded all capital gains income from Jerry Shae's net income calculation. Neither the district court nor Jerry Shae justify the exclusion of this money with citation to case law, statutes or the administrative code.

[¶ 21] The district court is able to consider the obligor's ability to pay for the purposes of child support determinations. *See* N.D. Admin. Code § 75–02–04.1–01(4)(b). This allows the district court to consider the unique circumstances of a case when determining the amount the obligor must pay, as here, where Jerry Shae sold his farm, realizing capital gains of $2,935,460, and purchased a replacement farm for $1,900,000, in addition to selling machinery for $172,380. Colette Shae recognized this consideration by noting the income was non-recurring and that she only is seeking the child support payments for 2012 to reflect the increased ability to pay from the capital gains. Further, section 75–02–04.1–01(4)(b) and (6), N.D. Admin. Code, *requires* that gains be included in the calculation of gross income, and gross income is used to calculate net income. Section 75–02–04.1–02(3), N.D. Admin. Code, *requires* that net income be considered in the determination of available money for child support. No matter the district court's ultimate conclusion of how much additional child support is necessary, it must start with an accurate representation of Jerry Shae's net income. *See id.* Therefore, the district court erred by failing to include the capital gains from the farm and equipment sales in calculating Jerry Shae's net income for 2012.

V

[¶ 22] The district court's child support award was clearly erroneous because the district court misapplied the law by award-ing child support calculated on thirty-four percent of Jerry Shae's monthly income. Further, before the district court determined the child support increase, it was required to determine Jerry Shae's net income, requiring a determination of Jerry Shae's gross income. The district court erred in calculating Jerry Shae's gross income under section 75–02–04.1–01(4)(b), N.D. Admin. Code, by failing to include his farming losses, wages, taxable interest, capital gains from farm land and machinery sales, and self-employment income, including the income Jerry Shae received from Northwest Water Transfer. Jerry Shae's argument the district court committed a material error in finding he terminated his employment as an engineer in 2012 rather than mid–2011 is inconsequential because the nominal self-employment income of $340 Jerry Shae made while working full-time for Northwest Water Transfer was included in his line 17 self-employment income for 2011 and was properly excluded for child support determination purposes because it was not substantially similar to the previous years. The district court properly limited Jerry Shae's self-employment income amount to 2012, rather than averaging the previous five years. We reverse the district court's amended order for a child support determination and remand for proceedings in accordance with this decision.

[¶ 23] Finally, the district court judge presiding over this proceeding has retired. "On remand, the district court will need to make a Rule 63, N.D.R.Civ.P., certification prior to conducting further proceedings or, alternatively, order a new trial." *Clark v. Clark*, 2005 ND 176, ¶ 18, 704 N.W.2d 847. Rule 63, N.D.R.Civ.P., requires:

"If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determin-

ing that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness."

[¶ 24] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.