2014 ND 199

**Brian Keith WILSON, Plaintiff and Appellee**

v.

**Cheryl Ann WILSON, Defendant and Appellant**

and

**State of North Dakota, Department of Human Services, Statutory Real Party In Interest and Appellee.**

No. 20140037.

Supreme Court of North Dakota.

Oct. 28, 2014.

Rehearing Denied Nov. 12, 2014.

Patti J. Jensen, East Grand Forks, Minn., for plaintiff and appellee.

Steven J. Simonson (argued) and Adele H. Page (appeared), Fargo, N.D., for defendant and appellant.

Robert A. Freed (on brief), Grand Forks, N.D., for statutory real party.

KAPSNER, Justice.

[¶ 1] Cheryl Wilson appeals from a district court judgment granting her a divorce from Brian Wilson, distributing the parties' marital estate, and ordering Brian Wilson pay child support. We conclude the district court did not err in distributing the parties' marital estate. However, we conclude the district court incorrectly calculated Brian Wilson's 2011 and 2012 child support obligation. We affirm in part, reverse in part, and remand.

I

[¶ 2] Cheryl and Brian Wilson were married in 1996, and have two minor children together. The parties separated in 2005. The parties' children lived with Cheryl Wilson during the separation and Brian Wilson voluntarily paid child support.

[¶ 3] Brian Wilson was in the Air Force during the parties' marriage. He was assigned to the United States' Embassy in Djibouti from May 2007 until May 2009, and London from June 2009 until October 2012, when he was discharged from the Air Force. Cheryl Wilson works two part-time jobs and goes to school.

[¶ 4] Brian Wilson filed for divorce in November 2012. After a trial, the district court entered an order awarding Cheryl Wilson primary residential responsibility of the children and distributing the parties' marital estate. The court reserved the issue of child support to allow the State, as a real party in interest, to have an opportunity to submit any argument and to provide the parties with an opportunity to respond.

[¶ 5] After the parties submitted child support calculations and briefs on the issue, the court entered an order setting Brian Wilson's child support obligation. The court found Brian Wilson was providing Cheryl Wilson with child support during the separation. The court found Cheryl Wilson applied for medical assistance in August 2011, the State attempted to serve Brian Wilson at that time but he would not accept service, and the court ordered the child support obligation would begin in August 2011. The court calculated Brian Wilson's income to determine his child support obligation and found he received base pay and large allowances for housing and living expenses while he was stationed overseas in 2011 and 2012. The court found the allowances included $4,184 per month for Overseas Housing Allowance ("OHA") and $1,328 per month in a Cost of Living Allowance ("COLA") in 2011. The court found the OHA and COLA payments included $325 for Basic Allowance for Subsistence ("BAS") and $1,310 for Basic Allowance for Housing ("BAH") in 2011. The court included Brian Wilson's base pay and BAS and BAH amounts to calculate his income, but found the OHA and COLA payments were not income for child support purposes. The court calculated Brian Wilson's child support obligation and ordered he pay $1,358 per month for August to December 2011, $1,415 per month for 2012, $761 per month for January to October 2013, and $704 per month after October 2013. The court entered a subsequent order giving Brian Wilson credit for the child support he vol-

untarily paid while the parties were separated.

## II

[¶ 6] Cheryl Wilson argues the district court abused its discretion by denying her request for a continuance and dividing the parties' marital estate without being provided full disclosure of Brian Wilson's Wells Fargo Bank account history. She claims there was evidence Brian Wilson evaded disclosing requested information about his bank accounts, he admitted he jointly held a Wells Fargo account with his mother, he did not provide any of the requested discovery for the Wells Fargo account, and there was evidence he deposited funds and made substantial transfers to that account. She contends the court should have granted her request for a continuance or to keep the record open to provide more time and allow the information about the Wells Fargo account to be disclosed before dividing the parties' property because the account may have contained the parties' largest asset.

[¶ 7] The district court has broad discretion over the presentation of evidence and the conduct of a trial. *Hartleib v. Simes*, 2009 ND 205, ¶ 15, 776 N.W.2d 217. The court also has broad discretion in deciding whether to grant a motion for a continuance, and the court's decision will not be reversed on appeal absent an abuse of discretion. *Rickert v. Dakota Sanitation Plus, Inc.*, 2012 ND 37, ¶ 31, 812 N.W.2d 413. The court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Hartleib*, at ¶ 15.

[¶ 8] Cheryl Wilson requested discovery from Brian Wilson in December 2012, including requests for information related to existing bank accounts and accounts closed within the past five years, joint or individually held. On March 1, 2013, Cheryl Wilson moved to compel discovery, seeking an order compelling Brian Wilson to provide the requested information about his existing and past bank accounts. In April 2013, Cheryl Wilson requested the court issue a subpoena duces tecum for certain financial records she alleged Brian Wilson failed to produce, and the court granted her request. On May 6, 2013, Cheryl Wilson moved for a continuance, arguing a continuance was necessary to provide her with sufficient time to obtain compliance with her discovery requests.

[¶ 9] On May 31, 2013, the district court granted Cheryl Wilson's motion to compel discovery and ordered Brian Wilson provide information within ten days about any bank accounts he held, either individually or jointly, within the last five years. The court also ordered Cheryl Wilson to prepare and forward to Brian Wilson authorizations for release of his account records and Brian Wilson to expeditiously execute any provided releases. The court ordered Cheryl Wilson "will have the burden and expense of obtaining the account records pursuant to [Brian Wilson's] signed release of information."

[¶ 10] On June 4, 2013, Brian Wilson filed a notice of compliance with the order to compel, stating Cheryl Wilson did not provide him with an authorization to release information from Wells Fargo and he was asked to obtain the records himself. On June 28, 2013, Cheryl Wilson requested the court amend the order compelling discovery to require Brian Wilson to request certain bank records, but not the Wells Fargo records. On July 1, 2013, Cheryl Wilson filed a request to leave the record open, claiming she had not received the Wells Fargo records. The trial was held

on July 2 and 3, 2013, and Cheryl Wilson again requested the court leave the record open. The court denied Cheryl Wilson's request, finding there was testimony about the Wells Fargo account during the trial, further argument would be required if the record remained open and further evidence was submitted, the court would only keep the record open for something crucial, and this was not a crucial issue.

[¶ 11] We conclude the district court did not abuse its discretion by denying Cheryl Wilson's request for a continuance or her request to leave the record open to submit further evidence after the trial. Cheryl Wilson was ordered to provide Brian Wilson with authorizations for release of the bank records and the court ordered that she had the burden of obtaining the records. Brian Wilson filed a notice of compliance with the order to compel stating Cheryl Wilson did not provide an authorization for Wells Fargo and asked him to obtain the records himself because Wells Fargo would not release the information based upon an authorization. Cheryl Wilson did not request the court amend the order to compel to require Brian Wilson obtain the Wells Fargo records. She also did not subpoena the Wells Fargo records. Cheryl Wilson had the burden to obtain the records. The court found there was sufficient evidence about the Wells Fargo account in the record and further argument would be required if the parties submitted evidence after the trial. The court did not act in an arbitrary, unreasonable, or unconscionable manner, and we conclude the court did not abuse its discretion. We affirm the district court's property division.

### III

[¶ 12] Cheryl Wilson argues the district court erred in calculating Brian Wilson's child support obligation. Child support decisions involve questions of law subject to the de novo standard of review, findings of fact subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard. *Shae v. Shae*, 2014 ND 149, ¶ 6, 849 N.W.2d 173. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* A court errs as a matter of law when it fails to comply with the child support guidelines in determining a child support obligation. *Id.* The interpretation and application of a provision of the child support guidelines is a question of law, which is fully reviewable on appeal. *Id.* at ¶ 13.

### A

[¶ 13] Cheryl Wilson argues the district court abused its discretion by setting August 2011 as the effective date to start Brian Wilson's child support obligation. She contends August 2011 was an arbitrary date and there is no rational basis to conclude that date is any more appropriate than any other date after the parties separated in 2005.

[¶ 14] Section 14–08.1–01, N.D.C.C., provides:

A person legally responsible for the support of a child under the age of eighteen years who is not subject to any subsisting court order for the support of the child and who fails to provide support, subsistence, education, or other necessary care for the child, regardless of whether the child is not or was not in destitute circumstances, is liable for the reasonable value of physical and custodial care or support which has been furnished to the child by any person, institution, agency, or county social service

board. Any payment of public assistance money made to or for the benefit of any dependent child creates a presumption that such payment equals the reasonable value of physical and custodial care or support.

This Court has held the district court has discretion to order past child support covering a period when the parties are separated but divorce proceedings are not pending under N.D.C.C. § 14–08.1–01. *See Hagel v. Hagel*, 2006 ND 181, ¶ 7, 721 N.W.2d 1. The court's decision to award past support will not be reversed on appeal unless the court abused its discretion. *Hammeren v. Hammeren*, 2012 ND 225, ¶ 30, 823 N.W.2d 482.

[¶ 15] Here, the court found Brian Wilson paid child support since 2005, while the parties were separated, and Cheryl Wilson was receiving and using tax advantages and refunds or credits during that time. The court further found Cheryl Wilson applied for medical assistance in August 2011 and the State attempted to serve Brian Wilson at that time, but he was in England and would not accept service. The court calculated Brian Wilson's past child support obligation starting in August 2011 and applied the child support guidelines to determine his support obligation.

[¶ 16] In *Hagel*, this Court reversed the district court's decision to deny a request for past child support because the court did not provide any explanation for its decision after it found the father made minimal effort to support the children during the period of separation. 2006 ND 181, ¶ 9, 721 N.W.2d 1. Unlike *Hagel*, Brian Wilson voluntarily paid child support during the period when the parties were separated and the district court explained its decision setting the date it started the child support obligation. Cheryl Wilson admits Brian Wilson made voluntary child

support payments while they were separated, including payments of $500 to $1,000 per month from 2005 until October 2012 when he went on military disability status and reduced his payment to $850 per month. The court did not arbitrarily pick the start date of Brian Wilson's child support obligation; rather, the court considered that Cheryl Wilson applied for medical assistance in August 2011 and the State attempted to serve Brian Wilson to begin child support proceedings and calculate his child support obligation at that time but he would not accept service. We conclude the district court did not abuse its discretion.

B

[¶ 17] Cheryl Wilson argues the district court erred in failing to consider Brian Wilson's $30,000 career service bonus as income for purposes of calculating his child support obligation. Although Brian Wilson received a $30,000 career service bonus in 2009, Cheryl Wilson argues it is a source of income that must be considered in determining his current support obligation.

[¶ 18] The child support guidelines use the obligor's total gross annual income to calculate the obligor's net income and the child support obligation. N.D. Admin. Code §§ 75–02–04.1–01(6) and 75–02–04.1–02. The child support guidelines define "gross income" as "income from any source, in any form," and provide examples of gross income, including bonuses. N.D. Admin. Code § 75–02–04.1–01(4)(a) and (b). However, the guidelines also include exceptions to the definition of gross income, and state "gross income" "does not mean ... [a]typical overtime wages or nonrecurring bonuses over which the employee does not have significant influence or control." N.D. Admin. Code § 75–02–04.1–01(4)(a)(4).

[¶ 19] The parties agree the bonus was a nonrecurring bonus, but they disagree about whether Brian Wilson had significant influence or control over receiving the bonus and whether the exception applies. However, the district court did not make any findings about this issue and we do not have to decide whether the bonus was income. The district court has discretion in deciding how to allocate nonrecurring "gross income" and there are various methods that may be appropriate for the court to use to allocate the income, including allocating the amount over the year following receipt of the income or allocating the amount over the child's minority. *Dupay v. Dupay*, 2010 ND 87, ¶¶ 10–11, 782 N.W.2d 42. Brian Wilson received the bonus in 2009, the district court calculated Brian Wilson's child support obligation starting in 2011 and did not include the career service bonus in his gross income. Although Cheryl Wilson claims the bonus should be spread out over the remaining years of Brian Wilson's child support obligation until the children have attained majority age, she did not raise this issue before the district court and we will not consider it on appeal. *See Isaacson v. Isaacson*, 2010 ND 18, ¶ 15, 777 N.W.2d 886 (arguments that are not raised before the trial court cannot be raised for the first time on appeal). We conclude the district court did not err in failing to include the career service bonus in Brian Wilson's income for calculating his child support obligation.

C

[¶ 20] Cheryl Wilson argues the district court erred in failing to include Brian Wilson's COLA and OHA in his gross income when it calculated his child support obligation.

[¶ 21] The district court calculated Brian Wilson's gross income for 2011 and 2012 to determine his child support obligations for those years. In calculating Brian Wilson's gross income, the court included his base pay for his military service and his BAH and BAS because they were "normal military subsistence payments." Cheryl Wilson and the State requested the court also include Brian Wilson's OHA and COLA in his gross income. The court found the COLA payments were designed to offset the higher overseas prices of non-housing goods and services and were intended to equalize purchasing power so service members can purchase the same level of goods and services overseas as they could if they were stationed in the continental United States. The court found the OHA payments enable military members assigned overseas to privately lease housing. The court considered cases from other jurisdictions where similar issues have been raised, but determined not to include the amounts for OHA and COLA because they were payments for extraordinary expenses for living in London, Brian Wilson testified his living expenses were extraordinarily high and the money paid for those expenses, and OHA and COLA pay were not specifically included in the child support guidelines' examples of gross income. The court included the BAS and BAH payments in Brian Wilson's gross income, finding they were "normal reoccurring income items." The court further explained:

The military has recognized that these COLA and OHA payments are extraordinary living expenses which are not regular living expenses. To attribute these extraordinary expenses as income for child support purposes would tend to impoverish the military member serving their country in such circumstances. Certainly, if the military member is paid extra pay without the added expenses such pay would be considered income for child support purposes.

[¶ 22] Brian Wilson argues the district court did not err in failing to include his COLA and OHA payments as gross income to determine his child support obligation because the court was ordering past support as reimbursement and the court is not required to apply the guidelines when it orders reimbursement. He claims it is apparent from the court's decision that it was not applying the guidelines to determine his ability to pay back support.

[¶ 23] When a court decides to order a party pay past support under N.D.C.C. § 14–08.1–01, the court may, but is not required to, consider the child support guidelines to determine the reasonable amount of reimbursement. *Hagel*, 2006 ND 181, ¶ 6, 721 N.W.2d 1; *Krug v. Carlson*, 2000 ND 157, ¶ 10, 615 N.W.2d 564. In this case, the district court applied the guidelines to determine a reasonable amount of support. The court included the BAS and BAH payments in Brian Wilson's gross income because it determined they were military subsistence payments. The court said there was no North Dakota case law deciding the issue of whether OHA payments are "income" for child support purposes. The court ultimately decided the COLA and OHA payments were not gross income, stating "COLA pay and OHA are not listed in the ND Guidelines as examples of gross income. *See* N.D. Admin.Code § 75–02–04.1–01(4)(b)." The court calculated the child support obligation using the guidelines' table contained in N.D. Admin. Code § 75–02–04.1–10. The court interpreted and applied the child support guidelines to calculate Brian Wilson's child support obligation.

[¶ 24] Although this Court has not previously addressed whether military OHA and COLA payments are gross income for child support purposes, we have said the guideline definition of "gross income" is "very broad and is intended to include any form of payment to an obligor, regardless of source, which is not specifically excluded under the guidelines." *Berge v. Berge*, 2006 ND 46, ¶ 12, 710 N.W.2d 417. The child support guidelines define gross income as "income from any source" and include military subsistence payments as examples of gross income. N.D. Admin. Code § 75–02–04.1–01(4). The guidelines further provide that the child support amount calculated by applying the guidelines is presumed to be the correct amount of support and the guidelines may not be rebutted based upon "[t]he subsistence needs, work expenses, and daily living expenses of the obligor[.]" N.D. Admin. Code § 75–02–04.1–09(1). The guidelines specifically include military subsistence as an example of gross income. The guidelines do not specifically define "military subsistence," but Black's Law Dictionary defines "subsistence" as "[s]upport; means of support." *Black's Law Dictionary* 1565 (9th ed.2009). The district court found the COLA funds are intended to offset higher overseas prices of non-housing goods and services, and the OHA funds are intended for overseas privately-leased housing. The COLA and OHA payments are military subsistence, which are explicitly included in the definition of gross income. Furthermore, the guidelines state the presumptively correct amount of support under the guidelines may not be rebutted for subsistence needs and the obligor's daily living expenses. We conclude Brian Wilson's COLA and OHA payments are gross income for purposes of determining his child support obligation.

[¶ 25] Our decision is consistent with those of other courts that have addressed similar issues. *See, e.g., Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996) (adjusted annual income means the parent's total income from all sources and

includes COLA and OHA); *Wiebusch v. Wiebusch,* 2010 Ohio 504, ¶ 19, 186 Ohio App.3d 237, 927 N.E.2d 64 (COLA received to defray higher costs of being stationed overseas is gross income); *cf. In re Marriage of Stokes,* 234 Or.App. 566, 228 P.3d 701, 705 (2010) (BAH and BAS are gross income); *Dortch v. Straka,* 59 Wash. App. 773, 801 P.2d 279, 282–83 (1990) (federal employee COLA for employee working in Alaska is gross income, which is defined as income from "any source").

[¶ 26] The OHA and COLA payments Brian Wilson received while he was stationed overseas were gross income under the child support guidelines. The district court applied the child support guidelines to calculate his child support obligation in 2011 and 2012, and we conclude the court erred by failing to include the OHA and COLA payments in his gross income. We reverse the district court's child support order. On remand, the court is required to recalculate Brian Wilson's child support obligation for 2011 and 2012 and include the OHA and COLA payments in his gross income.

### IV

[¶ 27] We affirm the district court's distribution of the parties' marital estate, but we reverse the portion of the judgment setting Brian Wilson's child support obligation and remand for the court to recalculate the support obligation.

[¶ 28] If, on remand, the same judge does not hear this case, the district court will need to make the certification required under N.D.R.Civ.P. 63 prior to conducting further proceedings. Rule 63, N.D.R.Civ. P., requires:

> If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

[¶ 29] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.